**UNITED STATES of America,**

v.

**Efrain VILLANUEVA–GAXIOLA.**

**No. 00–20043–01–JWL.**

United States District Court, D. Kansas.

Sept. 26, 2000.

Charles D. Dedmon, Office of Federal Public Defender, Kansas City, KS, for Efrain Villanueva–Gaxiola.

Leon J. Patton, Office of U.S. Attorney, Kansas City, KS, for U.S.

**MEMORANDUM AND ORDER**

LUNGSTRUM, District Judge.

On September 25, 2000, the court held a sentencing hearing in this case. At the

hearing, the court sustained defendant's second objection to the Presentence Investigation Report (PSIR), relating to the applicability of a 16 level enhancement to defendant's base offense level under United States Sentencing Guideline (USSG) § 2L1.2(b)(1)(A). The court here sets out its reasons for that ruling.

The author of the PSIR applied a 16 level enhancement to defendant's base offense level pursuant to USSG § 2L1.2(b)(1)(A). That guideline states that if a defendant was previously deported after a criminal conviction (whether or not the deportation was in response to the conviction) for an aggravated felony, as defined at 8 U.S.C. § 1101(a)(43), increase by 16 levels. The PSIR contends that defendant's past conviction for unlawful possession of a short-barreled shotgun on August 25, 1992 (PSIR ¶ 28) was an aggravated felony justifying the increase. The court disagrees.

The government has argued that defendant's conviction for possession of a dangerous weapon meets the definition of an "aggravated felony" because it falls under three subsections of 8 U.S.C. § 1101(a)(43), any one of which would support the enhancement. The court will address the three proposed subsections in turn.

### 1. 8 U.S.C. § 1101(a)(43)(E)(ii)

Subsection (E)(ii) defines "aggravated felony" as "an offense *described* in section 922(g) ... (5) of title 18, United States Code." 18 U.S.C. § 922(g)(5) states that it is unlawful for an illegal alien "to ship or transport in interstate or foreign commerce, *or possess in* or affecting commerce, any firearm or ammunition." Defendant maintains that he was convicted of "possession of a dangerous weapon," not "possession of a firearm by an alien."

The Tenth Circuit has held that, in determining whether a prior state crime is an "aggravated felony," a district court "must only look to the statutory definition, not the underlying circumstances of the crime, to make this determination." *Unit-ed States v. Reyes–Castro,* 13 F.3d 377, 379 (10th Cir.1993). *See also, United States v. Frias–Trujillo,* 9 F.3d 875 (10th Cir.1993); *United States v. Manuel–Mediano,* 182 F.3d 934, 1999 WL 317514 (10th Cir. May 20, 1999). While the Tenth Circuit has not compared a state weapon-possessions statute to the federal illegal alien in possession of a firearm statute, the Ninth Circuit recently has. The court is persuaded by the Ninth Circuit's analysis, and agrees that defendant's weapon-possession conviction cannot be the basis of the 16 level enhancement to his sentence.

In *United States v. Sandoval–Barajas,* 206 F.3d 853 (9th Cir.2000), the defendant had been previously convicted in Washington state court of "possession of a firearm by a non-citizen." Based on this conviction, the district court increased defendant's sentence by 16 levels, finding that the conviction met the definition of an "aggravated felony" found in 8 U.S.C. (A)(43)(E)(ii): an offense described in 18 U.S.C. § 922(g)(5). The issue addressed by the Circuit was whether the defendant's state law crime was "described in" 18 U.S.C. § 922(g)(5).

Addressing the language of 8 U.S.C. § 1101(a)(43), the Ninth Circuit acknowledged that, "[o]nce Congress decided to allow state (and foreign) offenses to serve as predicates for the 'aggravated felony' enhancement, as a practical matter it had to use some looser standard such as 'described in' rather than the more precise standard of 'defined in,' if it wanted more than a negligible number of state offenses to count as aggravated felonies." *Id.* at 855. As the Supreme Court noted in *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), most ancient felonies, such as burglary, are "defined in" different ways. Thus, the Ninth Circuit concluded that "[t]he elements need not be identical ... but the conduct has to be substantially similar enough so that the federal crime may be fairly said to be 'described in' the state statute, and the conduct criminalized by the state law must

be included within the conduct criminalized by the federal law." *Sandoval–Barajas* at 857. The Circuit noted that the Ninth Circuit (like the Tenth Circuit) only looks at the conduct encompassed by the state statute, not the defendant's actual conduct, when determining if a past crime is an "aggravated felony."

Then the Circuit compared the two statutes:

Here is the crime defined by the federal statute, 18 U.S.C. § 922(g)(5):

> (g) It shall be unlawful for any person
>
> . . . .
>
> (5) who, being an alien, is illegally or unlawfully in the United States;
>
> . . . .
>
> to . . . possess in or affecting commerce, any firearm or ammunition.

The Washington state statute under which [defendant] had been convicted defines the crime in these words:

> 9.41.170. Alien's license to carry firearms—Exception
>
> (1) It is a class C felony for any person who is not a citizen of the United States to carry or possess any firearm, without first having obtained an alien firearm license from the director of licensing.

The Circuit concluded that the federal crime was not "described in" the state statute:

> [T]he federal crime of possession of a gun by an illegal alien does not describe the crime defined by the Washington statute. One obvious difference is that the federal statute requires an interstate or foreign commerce element, but the Washington statute does not. . . . Another difference is that the federal statute applies only to some aliens, those who are "illegally or unlawfully in the United States," but the Washington statute applies to all aliens, "any person who is not a citizen."

Because of these differences, the Circuit held that, even if factually defendant's conduct could have fallen under both statutes, the statutes themselves were not similar enough for the court to conclude that the

federal crime was "described in" the state statute. The Circuit, therefore, remanded the case for resentencing.

██ When the court compares the California statute under which defendant here was convicted, the court similarly does not find that the federal crime of possession of a gun by an illegal alien is "described in" the state statute. California Penal Code § 12020 states:

> "Any person in this state who does any of the following is punishable by imprisonment: (1) . . . possesses . . . any short-barreled shotgun."

Like the Washington statute in *Sandoval–Barajas,* this California statute lacks the interstate or foreign commerce element found in the federal statute. More importantly, the federal statute only applies to illegal aliens, while the California statute applies to "any person"—it is not even limited to all "aliens" as the Washington statute was. The court simply does not find these statutes similar enough to conclude that defendant's California state conviction described in ¶ 28 was an "aggravated felony" justifying a 16 level enhancement pursuant to USSG § 2L1.2(b)(1)(A).

**2. 8 U.S.C. § 1101(a)(43)(E)(iii)**

██ The government has also argued that defendant's conviction under California Penal Code § 12020 is an aggravated felony as defined in subsection (E)(iii) because it is an offense described in § 5861 of the Internal Revenue Code (IRC). The court's research has uncovered no Tenth Circuit case applying 8 U.S.C. § 1101(a)(43)(E)(iii) in the context of USSG § 2L1.2(b)(1)(A). Applying the *Sandoval–Barajas* analysis discussed above, however, the court rejects the contention that the state conviction for possession of a dangerous weapon was described in 26 U.S.C. § 5861.

The Internal Revenue Code statute, 26 U.S.C. § 5861, states:

> It shall be unlawful for any person—

(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record.

Again, the essence of the state and federal statutes are not the same. 26 U.S.C. § 5861 hinges on the fact that a person has not registered his or her short-barreled shotgun, not on the fact that a person simply possesses a short-barreled shotgun. One could thus comply with the IRC statute by registering his or her short-barreled shotgun with the National Firearms Registration and Transfer Record, but could still violate California Penal Code § 12020 by simply possessing the short-barreled shotgun (whether registered or not). The Ninth Circuit has stated that "Where conduct could comply with the relevant federal statute yet violate the state statute, the federal crime cannot be deemed to be 'described in' the state statute."

### 3. 8 U.S.C. § 1101(a)(43)(F)

██ Finally, the government has raised the argument that defendant's California conviction meets the definition of "aggravated felony" found in subsection (F). Subsection (F) defines "aggravated felony" as a crime of violence (as defined in 18 U.S.C. § 16) for which the term of imprisonment is at least one year. 18 U.S.C. § 16(b) defines a crime of violence as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."[1]

██ The court has not found, and the parties have not cited, any Tenth Circuit case holding that possession of short-barreled shotgun is a crime of violence. The government cites a Ninth Circuit case which holds that possession of an unregistered firearm is a crime of violence within the meaning of the Guideline permitting a defendant to be sentenced as a career offender. *See United States v. Dunn*, 946 F.2d 615 (9th Cir.1991). The court finds, however, that a recent Ninth Circuit opinion is more factually on point to the instant sentencing issue. In *United States v. Villanueva–Garcia*, 2000 WL 420637 (9th Cir. April 18, 2000) the court analyzed whether a violation of a California statute with a penalty provision which reads the same as the penalty provision of the California statute under which defendant was convicted could be a "crime of violence" pursuant to 18 U.S.C. § 16(b).[2] The penalty provision in both statutes provides that punishment shall be by "imprisonment in the county jail not exceeding one year or in the state prison." Under the following persuasive analysis, the Ninth Circuit concluded that the violation of a statute containing this language could not be a "crime of violence:"

> California law defines a misdemeanor as a crime "punishable, at the discretion of the court, by imprisonment ... other than imprisonment in the state prison." Cal.Penal Code § 17(b)(1). Thus, [the penalty provision] gives the judge discretion to sentence either as a misdemeanor or a felony. We look only to the statute and not the circumstances underlying the particular conviction. We consider the entire range of conduct encompassed by the statute. Since [the penalty provision] encompasses misdemeanor offenses, it does not qualify as a felony under 18 U.S.C. § 16(b).

Under the above analysis, the government's argument that defendant's conviction under California Penal Code § 12020 is a conviction for a "crime of violence," as defined in 18 U.S.C. § 16(b), must fail. As previously stated, the Tenth Circuit, like the Ninth Circuit, follows the categorical approach that in determining whether a

---

1. 18 U.S.C. § 16(a) defines crime of violence as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."

2. The statute involved in *Villanueva–Garcia* was Cal.Penal Code § 246.3: Discharge of a Firearm with Gross Negligence. The statute involved here is Cal.Penal Code § 12020: Unlawful Carrying and Possession of Weapons.

**1190**

prior state crime is an aggravated felony, the court "must only look to the statutory definition, not the underlying circumstances." *Reyes–Castro*, 13 F.3d at 379. Because California Penal Code § 12020 encompasses misdemeanor offenses, it cannot meet the definition of "crime of violence" in 18 U.S.C. § 16(b).

 Finding that defendant's previous California conviction for possession of a dangerous weapon is not described in any of the federal statutes suggested by the government, the court agrees with defendant that his base offense level should be increased by only 4 levels, not 16 levels, pursuant to USSG § 2L1.2(b)(1)(B). USSG § 2L1.2(b)(1)(B) states that if the defendant was previously deported after a criminal conviction for "any other felony," meaning a non-aggravated felony, the court must increase defendant's base offense level by 4 levels. As a side note, the court points out that the definition of "felony" for this purpose is different from the definition of "felony" for 18 U.S.C. § 16(b) purposes. While the Commentary to Guideline 2L1.2 does not define "aggravated felony," pointing instead to the numerous subsections of 8 U.S.C. § 1101(a)(43) for a definition, the commentary does define "felony." Application Note 1 states that " 'felony offense' means any federal, state, or local offense punishable by imprisonment for a term exceeding one year." As defendant was ultimately sentenced to 16 months in state prison for his violation of California Penal Code § 12020, the definition of "felony" is met for the purpose of increasing defendant's base offense level 4 points under USSG § 2L1.2(b)(1)(B). Since defendant's base offense level should have only been increased by 4 points, rather than 16 points, defendant's total offense level becomes 10.[3]

**IT IS SO ORDERED.**

---

3. Because defendant's offense level is now calculated at less than 16, defendant does not receive the one level decrease to his offense level pursuant to USSG § 3E1.1(b).