United States Court of Appeals
Fifth Circuit

**F I L E D**

April 3, 2003

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**02-20392**

_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**JUAN JOSE DIAZ-DIAZ,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court
for the Southern District of Texas**

_____

Before GARWOOD, SMITH, and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Juan Jose Diaz-Diaz contests a 16-level sentencing enhancement. Pursuant to a guilty plea, he was convicted for illegal presence in the United States in September 2000, following deportation after having been convicted of an aggravated felony. *See* 8 U.S.C. § 1326(a) and (b)(2). The enhancement, *not* objected to at sentencing in 2002, was under the then-in-effect 2001 version of Sentencing Guidelines § 2L1.2(b)(1)(A)(iii)(enhancement for "a firearms offense"). Primarily at issue is whether, in applying that version, the district court committed a plain error violation of the Ex Post Facto Clause, U.S. Const. art. I, § 10, cl. 1. **AFFIRMED**.

I.

Diaz, a citizen of Honduras, was convicted in Texas state court in 1997 for possession of a prohibited weapon — a short-barrel firearm — in violation of TEX. PENAL CODE § 46.05.  Diaz was deported in 1998.

In September 2000, the INS discovered Diaz in a Texas jail; he had been arrested for forgery of a government instrument.  Diaz had not received permission to return to the United States.  In October 2001, Diaz was charged with being illegally present in the United States.  *See* 8 U.S.C. § 1326(a) and (b)(2).  That November, he pleaded guilty to the charge.

In April 2002, the district court, applying the then-in-effect 2001 version of the guidelines, determined, pursuant to Guidelines § 2L1.2(b)(1)(A)(iii), that Diaz' base offense level should be increased by 16 because of his prior conviction for "a firearms offense".  Diaz did *not* object to the enhancement.  Following an acceptance of responsibility reduction, the guidelines range was 57 to 71 months.  Diaz was sentenced, *inter alia*, to a 57-month prison term.

II.

Diaz contends:  (1) the enhancement violated the Ex Post Facto Clause; and (2) the "felony" and "aggravated felony" provisions of 8 U.S.C. § 1326(b)(1) and (2) are unconstitutional.  For the first

2

issue, there was no plain error; the second is presented only to preserve it for possible Supreme Court review.

A.

"A sentencing court must apply the version of the sentencing guidelines effective at the time of sentencing unless application of that version would violate the Ex Post Facto Clause of the Constitution." *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Such a violation occurs when application of a current guideline "results in a more onerous penalty" than would application of a guideline in effect at the time of the offense. *Id*. Accordingly, in claiming an *ex post facto* violation, Diaz maintains he should have been sentenced under the 2000, rather than the 2001, version of the guidelines, based on his claim that, under the former, he would not have been subject to the enhancement.

The Presentence Investigation Report (PSR), using the 2001 version, recommended the enhancement pursuant to § 2L1.2(b)(1)(A)(iii) ("a firearms offense"). The PSR based this recommendation on the following: "The prohibited firearm possessed by [Diaz] was a short barreled shotgun and is the type *described in 26 U.S.C. § 5845(a)*". (Emphasis added.) (The "described in" language is discussed *infra* in part II.A.2., concerning an alternate basis urged by the Government for there being no *ex post facto* violation.)

3

During sentencing, Diaz' attorney did not object to the enhancement. To the contrary, he agreed that Diaz' prior firearms conviction "certainly is a 16-level enhancement with the categorical approach [used by the 2001 version for 'a firearms offense']. All firearm offenders ... automatically [receive a] 16-level enhancement".

As Diaz concedes on appeal, because he failed to object to the enhancement, including failing to raise in district court the *ex post facto* claim belatedly presented now, his claim is reviewed only for plain error. *E.g., United States v. Calverley*, 37 F.3d 160, 162 (5th Cir. 1994) (en banc), *cert. denied*, 513 U.S. 1196 (1995). Under this standard, we will reverse a district court's decision only if there was a "clear" or "obvious" error that affected a defendant's substantial rights. *E.g., United States v. Olano*, 507 U.S. 725, 732-34 (1993). Even then, we have discretion; generally, we will reverse only if the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings". *Id.* at 732 (citations omitted).

For the 2001 version of § 2L1.2 in effect at the time of sentencing, Diaz is subject to the enhancement. Therefore, our *ex post facto* analysis keys on whether Diaz would have been subject to the same enhancement under the 2000 version, which was in effect at the time of his offense.

4

The applicable guideline under the 2001 version is § 2L1.2(b)(1)(A)(iii) (enhancement for "a firearms offense"). Under the 2000 version, the applicable guideline is § 2L1.2(b)(1)(A); a 16-level enhancement was appropriate when the prior conviction was an "aggravated felony", as defined in 8 U.S.C. § 1101(a)(43). U.S.S.G. § 2L1.2, cmt. n.1 (2000). The Government maintains short-barrel firearm possession qualifies as such an "aggravated felony" *in either of two ways* under 8 U.S.C. § 1101(a)(43): (1) under subsection (F), as a "crime of violence"; and (2) under subsection (E)(iii), as an offense "described in" 26 U.S.C. § 5861.

Of course, because Diaz did not object to the enhancement under the 2001 version discussed in the PSR, the district court did not conduct the *ex post facto* analysis in which we must now engage, including whether Diaz would have received the same enhancement under the 2000 version. Restated, Diaz' failure to object obviated the district court's engaging in an analysis of the 2000 version; that version was never mentioned to it. The question, for our extremely narrow plain error analysis, is whether the district court committed, *inter alia*, a "clear" or "obvious" error in applying the 2001 guidelines.

Concomitantly, the Government was called upon, for the first time on appeal, to present bases for upholding that application, including demonstrating Diaz would have received the same enhancement under the 2000 version. In so doing, it referenced,

5

*inter alia*, subsection (E)(iii) of 8 U.S.C. § 1101(a)(43), as incorporated by the 2000 version. Post oral argument, the parties were permitted to submit supplemental briefs on that subsection. As discussed *infra*, that subsection is the basis for there being *no* plain error.

### 1.

One basis for a 16-level enhancement for an "aggravated felony" pursuant to the 2000 version of § 2L1.2(b)(1)(A) is subsection (F) of the incorporated 8 U.S.C. § 1101(a)(43): "a crime of violence (as defined in [18 U.S.C. §] 16 ...) for which the term of imprisonment [is] at least one year". The Government claims Diaz' firearm conviction was such a "crime of violence" under § 16(b) ("any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used *in the course of committing the offense*" (emphasis added)).

*United States v. Chapa-Garza*, 243 F.3d 921 (5th Cir. 2001), established the framework for determining whether an offense is a § 16(b) "crime of violence". First, a categorical approach is employed — "whether a particular defined offense, in the abstract, is a crime of violence under ... § 16(b)". *Id*. at 924. Second, the offense, "in the abstract", must present "the substantial likelihood that the offender will intentionally employ force

6

against the person or property of another *in order to effectuate the commission of the offense*". ***Id***. at 927 (emphasis added).

Pursuant to the ***Chapa-Garza*** framework, ***United States v. Hernandez-Neave***, 291 F.3d 296, 299 (5th Cir. 2001), held the Texas offense of unlawfully carrying a firearm on premises licensed to sell alcoholic beverages, TEX. PENAL CODE § 46.02, was *not* a § 16(b) crime of violence:

> In the case of unlawfully carrying a firearm onto premises licensed for the sale of alcoholic beverages, physical force against the person or property of another *need not be used to complete the crime*. The crime is *completed* by simply stepping over a threshold while carrying such a weapon.

(Emphasis added.)

Similarly, the Texas statute under which Diaz was convicted requires only that a defendant "knowingly possess[], manufacture[], transport[], repair[], or sell[] ... a short-barrel firearm". TEX. PENAL CODE § 46.05. As in ***Hernandez-Neave***, "physical force against the person or property of another need not be used to complete [that] crime". 291 F.3d at 299. Instead, it is complete upon, *inter alia*, mere knowing possession of the weapon.

Nevertheless, the Government relies upon ***United States v. Rivas-Palacios***, 244 F.3d 396, 398 (5th Cir. 2001), which held possession of a sawed-off shotgun *was* a § 16(b) "crime of violence". ***Rivas-Palacios***, rendered only eight days after ***Chapa-Garza***, failed to apply its framework. In this regard, ***Hernandez-***

7

*Neave* noted: "[T]o the extent that *Rivas-Palacios* conflicts with our holding ... it also conflicts with *Chapa-Garza*. When panel opinions appear to conflict, we are bound to follow the earlier opinion". 291 F.3d at 300 (internal quotations omitted). Consequently, *Rivas-Palacios* does not preclude our holding that possession of a short-barrel firearm is not a § 16(b) "crime of violence".

2.

Another basis for a 16-level enhancement for an "aggravated felony" pursuant to the 2000 version of § 2L1.2(b)(1)(A) is subsection (E)(iii) of the incorporated 8 U.S.C. § 1101(a)(43): an "offense described in ... [26 U.S.C. §] 5861 ... (relating to firearms offenses)". Section 5861(d) provides: "It shall be unlawful for any person ... to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record". A "firearm" is defined as, *inter alia*, "a shotgun having a barrel ... less than 18 inches in length". 26 U.S.C. § 5845(a)(1).

In this regard, the unobjected-to PSR stated: "The prohibited firearm possessed by [Diaz] was a short-barreled shotgun and is the type *described in* 26 U.S.C. § 5845(a)", cited here in the preceding paragraph. (Emphasis added.) Section 5845(a) was referenced in the PSR because, for subsection (A)(iii) of the 2001 version of § 2L1.2(b)(1), the operative "a firearms offense" is defined, in

8

part, as: "An offense under federal, state, or local law that prohibits the possession of a firearm *described in* 26 U.S.C. § 5845(a)". Cmt. 1(B)(v)(II) (emphasis added).

Similarly, TEX. PENAL CODE § 46.05(a)(3) prohibits knowing possession of a short-barrel firearm, defined as, *inter alia*, "a shotgun with a barrel length less than 18 inches". TEX. PENAL CODE § 46.01(10). It is a defense to a violation of § 46.05 that the "possession was pursuant to registration pursuant to the National Firearms Act [28 U.S.C. § 5801 *et seq.*]". TEX. PENAL CODE § 46.05(c). (There is nothing in the record concerning whether Diaz raised this defense against his 1997 conviction under the Texas statute.)

Accordingly, 26 U.S.C. § 5861 is almost identical to TEX. PENAL CODE § 46.05. Each proscribes possession of the same type of firearm. Each concerns possession of short-barrel firearms and registration *vel non* under the National Firearms Act; registration is a *defense* under Texas law, while non-registration is an *element* of the federal offense. (Also, the Texas statute incorporates other defenses to prosecution, not present in the federal statute. TEX. PENAL CODE § 46.05(b)(conduct incidental to performance of governmental duty) and (d)(dealing in collectibles).)

Despite subsection (E)(iii)'s classification of "offense[s] described in [26 U.S.C. §] 5861" as "aggravated felonies", Diaz contends state statutes similar to § 5861 should not be construed

as such felonies because Congress specifically cited a federal statute (§ 5861) instead of using a more generic term. Diaz offers no authority for this proposition. Moreover, subsection (E)(iii) encapsulates any offense that is sufficiently similar to § 5861 as to be "described" therein.

Diaz maintains *United States v. Villanueva-Gaxiola*, 119 F. Supp. 2d 1185 (D. Kan. 2000), offers a basis for holding § 46.05 is not "an offense described in" § 5861. *Villanueva-Gaxiola* held the California offense of unlawful possession of a short-barreled shotgun was *not* an offense "described in" § 5861. 119 F. Supp.2d at 1188. The California statute neither included non-registration as an element of the offense nor allowed a registration defense. *Villanueva-Gaxiola*'s holding was premised on its concluding that

> the essence of the state and federal statutes are not the same. 26 U.S.C. § 5861 hinges on the fact that a person has not registered his ... short-barreled shotgun, not on the fact that a person simply possesses a short-barreled shotgun. One could thus comply with the [federal] statute by registering his or her short-barreled shotgun ... but could still violate [the] California [statute] by simply possessing the short-barreled shotgun (whether registered or not).

*Id*. at 1189.

Unlike the California statute, TEX. PENAL CODE § 46.05 does not differ from the federal statute in any meaningful way. The Texas statute does incorporate national registration as a defense. Along this line, Diaz contends that, because registration is a defense to

the Texas statute, rather than an element of the offense, the Texas statute is not "described in" § 5861. He maintains that, because a defendant is obligated to produce evidence with regard to registration, a defendant may be convicted of the Texas offense while still complying, through federal registration, with § 5861. Therefore, according to Diaz, a conviction under the Texas statute does not "hinge" on a defendant's registration *vel non*. **Id**. at 1189.

Had the district court at least been called upon at sentencing to consider the question at hand, it certainly would not have been a "clear" or "obvious" error for it to conclude that the Texas offense was "described in" § 5861. In the light of subsection (E)(iii) of 8 U.S.C. § 1101(a)(43), as used in the 2000 version, we conclude that application of the 2001, instead of the 2000, version was not plain error. Restated, concerning an *ex post facto* violation *vel non*, there was no plain error.

### B.

In contending 8 U.S.C. § 1326(b)(1) and (2) are unconstitutional in the light of **Apprendi v. New Jersey**, 530 U.S. 466 (2000), Diaz concedes this issue is foreclosed by **Almendarez-Torres v. United States**, 523 U.S. 224 (1998). He raises it only to preserve it for possible Supreme Court review.

11

III.

For the foregoing reasons, the judgment is

**AFFIRMED.**