United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 30, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-50403

_____

UNITED STATES OF AMERICA,

                    Plaintiff-Appellant-Cross-Appellee,

                    versus

KENNETH DWAYNE GOLDING,

                    Defendant-Appellee-Cross-Appellant.

_____

Appeals from the United States District Court
for the Western District of Texas
_____

Before SMITH, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:

     Plaintiff-Appellant-Cross-Appellee United States of America ("government") appeals from the district court's decision not to classify Defendant-Appellee-Cross-Appellant Kenneth D. Golding's prior conviction for the unlawful possession of a machine gun as a conviction for a "crime of violence" under § 4B1.2(a) of the United States Sentencing Guidelines ("Guidelines").  As we determine that the unlawful possession of a machine gun is a "crime of violence" under § 4B1.2(a) of the Guidelines, we vacate the sentence imposed by the district court and remand for resentencing.

I.
FACTS AND PROCEEDINGS

Golding was indicted on one count of being a felon in possession of one or more firearms, <u>viz.</u>, a Remington 20-gauge shotgun and a Browning 20-gauge shotgun. The firearms indictment followed Golding's arrest by local police for driving while intoxicated ("DWI"), at which time the two shotguns were discovered in the cab of his pick-up truck. Golding pleaded guilty to the firearms charge without the benefit of a plea agreement with the government.

The probation officer submitted a presentence report ("PSR") reflecting that Golding had been convicted in 1992 for the unlawful possession of a machine gun, in violation of 18 U.S.C. § 922(o). The PSR included a recommendation that this prior offense be deemed a "crime of violence," as defined under § 4B1.2(a) of the Guidelines. Accordingly, the PSR recommended that Golding be assessed a base offense level of 20.[1]

Golding asserted two objections to the PSR. First, he took issue with the classification of his prior offense as a "crime of violence." Second, he complained of the district court's refusal to apply the "sporting exception" under § 2K2.1(B)(2), contending that the two shotguns he possessed at the time of his DWI arrest were used solely for bird hunting. (Golding's arrest occurred on the evening of the opening day of Texas's mourning dove season.)

In considering Golding's objections, the district court noted

---

[1] <u>See</u> U.S. SENTENCING GUIDELINES MANUAL § 2K2.1(a)(4)(A) (2002).

2

that the jurisprudence on classifying the unlawful possession of a machine gun as a "crime of violence" under the Guidelines is not well developed. Given its perceived uncertainty in the case law and its position that any doubt should be resolved in Golding's favor, the district court granted Golding's objection to the PSR's classification of his prior conviction for the unlawful possession of a machine gun as a conviction for a "crime of violence." In contrast, the court denied Golding's objection concerning the "sporting exception." In consequence of these rulings, the court re-evaluated Golding's base offense level to be 14, and sentenced him to five-months' imprisonment, to be followed by five-months' home detention as a condition of a three-year term of supervised release. The government timely filed a notice of appeal.[2]

## II.
## ANALYSIS

A. <u>Standard of Review</u>.

We review <u>de novo</u> a district court's application of the

---

[2] Golding has also appealed, contesting the district court's refusal to apply the Guidelines's "sporting exception," which would have lowered his base offense level from 14 to 6. <u>See</u> U.S. SENTENCING GUIDELINES MANUAL § 2K2.1(b)(2). The "sporting exception" is applicable only if a defendant's base offense level is 14 or less. <u>Id.</u> As we conclude that unlawful possession of a machine gun is a "crime of violence," his base offense level is 20, <u>see</u> U.S. SENTENCING GUIDELINES MANUAL § 2K2.1(a)(4)(A), precluding the applicability of the "sporting exception." Golding's appeal is therefore dismissed as moot, pretermitting our consideration of the district court's ruling on the "sporting exception."

3

Guidelines.[3]

B.    Unlawful Possession of a Machine Gun is a "Crime of Violence"
      under § 4B1.2(a) of the Guidelines.

A defendant who is convicted of being a felon in possession of a firearm should receive a base offense level of 20 "if [he] committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense."[4]   We have previously determined that, in sentencing a defendant under this provision, a district court must use the definition of "crime of violence" provided in the Guidelines and in its application notes.[5]  Accordingly, a "crime of violence" is defined for purposes of this case as:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that ——
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or <u>otherwise involves conduct that presents a serious potential risk of physical injury to another</u>.[6]

The application note states:

> Crime of violence includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of

_____

[3] <u>United States v. Fitzhugh</u>, 984 F.2d 143, 146 (5th Cir. 1993).

[4] U.S. SENTENCING GUIDELINES MANUAL § 2K2.1(a)(4)(A).

[5] <u>United States v. Charles</u>, 301 F.3d 309, 312 (5th Cir. 2002) (en banc).

[6] U.S. SENTENCING GUIDELINES MANUAL § 4B1.2(a) (emphasis added).

4

a dwelling.  Other offenses are included as crimes of violence if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the <u>conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted</u> involved use of explosives (including any explosive material or destructive device) or, <u>by its nature, presented a serious potential risk of physical injury to another</u>.[7]

We hold that an offense of unlawfully possessing a machine gun in violation of 18 U.S.C. § 922(o) is a "crime of violence" because it constitutes conduct that presents a serious risk of physical injury to another.  This risk is presented by the inherently dangerous nature of machine guns; a determination that is evidenced by Congress's decision to regulate the possession and transfer of this specific type of firearm.

Golding argues to the contrary, attempting to distinguish the unlawful possession of a machine gun from other firearm offenses that have been adjudicated "crimes of violence" under the Guidelines.  First, Golding contends that "possession" is not "conduct."  This contention is foreclosed by our recent decision in <u>United States v. Serna</u>,[8] in which we recognized that "'possession,' though often passive, constitutes 'conduct.'"[9]

Second, Golding urges us to consider the unlawful possession of a machine gun as a less serious crime than the unlawful

---

[7] U.S. Sentencing Guidelines Manual § 4B1.2, cmt. n.1 (internal quotation marks omitted) (emphasis added).

[8] 309 F.3d 859 (5th Cir. 2002).

[9] <u>Id.</u> at 863.

possession of the other firearms the possession and transfer of which are regulated or prohibited under federal gun-control statutes. Specifically, he notes that § 922(o), which applies only to machine guns, contains a "grandfather clause" that permits a private citizen to possess and transfer a duly registered machine gun that was "lawfully possessed" prior to 1986.[10] Golding is correct that this is unique within federal gun-control legislation, as there are no similar grandfather clauses for the possession or transfer of other types of firearms. Golding thus concludes that it would be "absurd" for us to construe the unlawful possession of a machine gun as a "violent crime," because —— unlike pipe bombs, sawed-off shotguns, grenades and other similarly regulated firearms —— a machine gun can be lawfully possessed.

Golding also attempts to buttress his inference from the statute's text by noting that in two instances courts have declined to classify the unlawful possession of a machine gun as a "crime of violence."[11] These cases are plainly inapposite: First, they do not pertain to the sentencing of a defendant under the Guidelines, and, second, they do not address circumstances in which a defendant's current indictment is predicated on a prior offense of unlawfully possessing a machine gun. Rather, these courts were simply resolving disputes concerning the Bureau of Prisons's

_____

[10] 18 U.S.C. § 922(o)(B).

[11] See Royce v. Hahn, 151 F.3d 116 (3d Cir. 1998); Bourke v. Hawk, 121 F. Supp. 2d 9 (D.C.C. 2000).

6

interpretation of particular post-conviction penal statutes.

In assessing Golding's construction of both § 922(o) and the Guidelines, we encounter two difficulties. First, there is no legislative history for § 922(o) to explain Congress's purpose in including the grandfather clause.[12] Second, there is no case law addressing the issue whether the unlawful possession of a machine gun is a "crime of violence" for purposes of determining a base offense level under § 4B1.2(a) of the Guidelines. This lacuna contrasts starkly with the jurisprudentially ubiquitous sawed-off shotgun, the unlawful possession of which has been adjudicated by numerous courts as constituting a "crime of violence."[13] Yet, we have located no published court decisions addressing the particular issue raised in this case: Whether a prior conviction for the unlawful possession of a machine gun constitutes a conviction for a "crime of violence," as this term is defined by § 4B1.2(a) of the Guidelines.[14]

---

[12] See David T. Hardy, The Firearms Owners' Protection Act: A Historical and Legal Perspective, 17 CUMB. L. REV. 585, 625 (1987).

[13] See United States v. Best, 250 F.3d 1084 (7th Cir. 2001); United States v. Johnson, 246 F.3d 330 (4th Cir. 2001); United States v. Brazeau, 237 F.3d 842 (7th Cir. 2001); United States v. Allegree, 175 F.3d 648 (8th Cir. 1999); United States v. Amparo, 68 F.3d 1222 (9th Cir. 1995); United States v. Dunn, 946 F.2d 615 (9th Cir. 1991).

[14] The Tenth Circuit has held in an unpublished opinion that a conviction for the illegal possession of a machine gun is a "crime of violence" under the same Bureau of Prisons statute adjudicated in Bourke v. Hawk, 121 F. Supp. 2d at 12-14, which came to the opposite conclusion and is relied on by Golding. See Sutherland v. Flemming, 229 F.3d 1164 (10th Cir. 2000)

7

We do not suggest, however, that Golding's interpretation of the Guidelines and § 922(o) should prevail by default.  The analytical framework employed by courts to conclude that the unlawful possession of a sawed-off shotgun is a "crime of violence" is also relevant for assessing whether the unlawful possession of <u>any</u> firearm regulated by a federal statute — particularly those regulated by the National Firearms Act[15] ("NFA") — is a "crime of violence" under § 4B1.2(a) of the Guidelines.

In determining the elements required for a conviction under NFA,[16] for example, the Supreme Court has explained that

> despite their potential for harm, guns generally can be owned in perfect innocence.  Of course, we might surely classify certain categories of guns — no doubt including the <u>machineguns</u>, sawed-off shotguns, and artillery pieces that Congress has <u>subjected to regulation</u> — as items the ownership of which would have the same quasi-suspect character we attributed to owning hand grenades in <u>Freed</u>.[17]

The analytical trigger for determining whether the unlawful possession of a machine gun is a "crime of violence" under the Guidelines is not whether the statute regulating this particular

_____

(unpublished).

[15] Golding was indicted under 18 U.S.C. § 922(o) of the Firearms Owners Protection Act, which incorporates by reference, in 18 U.S.C. § 921(a)(23), the NFA's definition of a machine gun.  <u>See generally</u> 26 U.S.C. § 5845 (listing and defining types of "firearms," including <u>machine guns</u>, rifles, shotguns, and "destructive devices," such as missiles, grenades, poison gas, rockets or "similar devices").

[16] <u>See</u> 26 U.S.C. § 5861(d) (2002).

[17] <u>United States v. Staples</u>, 511 U.S. 600, 611-12 (1994) (emphasis added).  <u>See United States v. Freed</u>, 401 U.S. 601 (1971).

8

type of firearm contains a grandfather clause but does not for similarly regulated firearms, as Golding contends. Rather, the question is whether a machine gun is simply one of a general class of "firearms" that Congress has subjected to regulation or prohibition as such.[18]

All weapons that Congress has regulated or prohibited under federal law as "firearms" —— including the machine guns, sawed-off shotguns, and artillery pieces mentioned by the Staples Court —— are "quasi-suspect."[19] As recognized by the Freed Court and affirmed by the Staples Court, such firearms are "highly dangerous offensive weapons" that are regulated "in the interest of public safety."[20] Accordingly, the unlawful possession of any such "firearm," including a machine gun, is a "crime of violence" under the Guidelines.[21]

This conclusion is consistent with our past decisions that have predicated our assessment of a firearm's inherently dangerous

---

[18] See generally 18 U.S.C. § 921; 26 U.S.C. § 5845.

[19] See United States v. Farrell, 69 F.3d 891, 894 (8th Cir. 1995) (noting that "machineguns are quasi-suspect" and thus "one cannot possess them with innocence and claim ignorance of the law").

[20] Freed, 401 U.S. at 609.

[21] Cf. United States v. Dwyer, 245 F.3d 1168 (10th Cir. 2001) (holding that the unlawful possession of a firearm is a "crime of violence" for sentence-enhancement purposes); United States v. Huffhines, 967 F.2d 314 (9th Cir. 1992) (holding that the unlawful possession of a silencer attached to loaded gun is a "crime of violence").

nature on whether it is specifically regulated as a "firearm" in the relevant federal gun-control statutes. In United States v. Jennings,[22] for instance, we noted our agreement with the First Circuit that there is a "difference between possession of a generic 'firearm' and possession of one of the specialized weapons singled-out for particularized treatment" in the NFA.[23] We also noted that, in 1968, Congress expanded the definition of "firearm" in response to its

> specific declaration and finding that destructive devices (such as bazookas, mortars, antitank guns, bombs, missiles, etc.), machine guns, short-barreled shotguns, and short-barreled rifles are primarily weapons of war and have no appropriate sporting use or use for personal protection.[24]

"[T]he primary reason that unregistered possession of these particular weapons is a crime is the virtual inevitability that such possession will result in violence."[25] Although in Jennings we were only addressing the question whether the unlawful possession of a sawed-off shotgun was a "crime of violence" —— which we answered with a definitive yes —— our analysis there clearly encompasses and justifies our determining in the instant case that the unlawful possession of a machine gun is likewise a

---

[22] 195 F.3d 795 (5th Cir. 1999).

[23] Id. at 799 n.1 (quoting United States v. Fortes, 133 F.3d 157, 162-64 (1st Cir. 1998), modified, 141 F.3d 1 (1st Cir. 1998)).

[24] Id. at 799 n.4 (quoting S. Rep. No. 90-1501, at 28 (1968)) (emphasis added).

[25] Id. at 799.

10

"crime of violence."

In <u>United States v. Rivas-Palacios</u>,[26] we again reiterated our commitment to this analytical framework, <u>i.e.</u>, that the illegal possession of any "firearm" listed in the federal gun-control statutes is a "crime of violence."  There we stated that:

> We are persuaded that the unlawful possession of <u>any</u> <u>unregistered</u> <u>firearm</u>, a sawed-off shotgun in this case, "involves a substantial risk that physical force against the person or property of another" will occur.[27]

Golding nevertheless attempts to make much of the fact that these decisions applied the "crime of violence" definition in 18 U.S.C. § 16(b), which we subsequently disavowed in <u>Charles</u> in favor of the "crime of violence" definition in the Guidelines.[28]  Golding's argument, though, misses the point.  The relevant analysis here turns on the statutory basis for categorizing the unlawful possession of a firearm as a "crime of violence" <u>under § 4B1.2(a)</u> <u>of the Guidelines</u>.  Although we may have recently revised our position on whether the mere possession of a sawed-off shotgun is a "crime of violence" under § 16(b),[29] this in no way affects the

---

[26] 244 F.3d 396 (5th Cir. 2001).

[27] <u>Id.</u> at 398 (emphasis added).

[28] 301 F.3d 309, 312 (5th Cir. 2002) (en banc).

[29] <u>United States v. Diaz-Diaz</u>, No. 02-20392, 2003 WL 1785764, at *3 (5th Cir. Apr. 3, 2003) (noting that our previous holding in "<u>Rivas-Palacios</u> does not preclude our [now] holding that possession of a short-barrel firearm is not a § 16(b) 'crime of violence'"). Our decision in <u>Diaz-Diaz</u> is predicated on our earlier rejection of <u>Rivas-Palacios</u> in <u>United States v. Hernandez-Neave</u>, 291 F.3d 296 (5th Cir. 2001), for failing to follow the framework for assessing

11

categorization of possession of a machine gun as a "crime of violence" under § 4B1.2(a) of the Guidelines, which requires only a "serious potential risk of physical injury."[30]   This definition is clearly met by the "quasi-suspect" nature of those firearms that Congress has chosen to regulate or prohibit, including machine guns.

This per se treatment is equally clear from an examination of our post-Charles decision in United States v. Serna, in which we determined that the unlawful possession of a sawed-off shotgun is a "crime of violence" under § 4B1.2(a) of the Guidelines.[31] Although Serna's holding is limited to the particular circumstances of the defendant's prior conviction —— the unlawful possession of a sawed-off shotgun —— the implication of our Serna decision is much broader.  In Serna, we re-affirmed the reasoning of Jennings that possession of any "unregistered firearm" is per se a crime of violence because such weapons inevitably result in "violence."[32] We also took a measure of comfort from the legislative history of the NFA, which expressly states that "there is no reason why anyone except a law officer should have a machine gun or a sawed-off

---

a "crime of violence" under § 16(b) as set forth by United States v. Chapa-Garza, 243 F.3d 921 (5th Cir. 2001), which was decided only eight days before Rivas-Palazios.

[30] U.S. SENTENCING GUIDELINES MANUAL § 4B1.2(a).

[31] Serna, 309 F.3d at 864.

[32] Id. at 863 (quoting Jennings, 195 F.3d at 799).

12

shotgun."[33] We are satisfied that machine guns are deserving of the same classification as sawed-off shotguns in the jurisprudence on the possession of firearms as "crimes of violence" under § 4B1.2(a) of the Guidelines.

It would be anomalous, therefore, for us to treat the illegal possession of particular types of federally prohibited "firearms" (e.g., sawed-off shotguns and pipe bombs) as "crimes of violence," but not treat possession of another particular type of federally proscribed "firearm" (e.g., machine guns) as a "crime of violence," even though all types are similarly regulated or prohibited under the federal gun-control statutes. To do so would, in effect, violate the canon of noscitur a sociis, which directs us to interpret a term in a statute "by reference to the words associated with them in the statute."[34]

Congress first identified a class of firearms that are inherently dangerous and then required that all such weapons be registered. The fact that Congress has totally banned ownership by private citizens of some, but not all, types of firearms within this class is a distinction without a difference. As we have already determined, under § 4B1.2(a) of the Guidelines, that unlawful possession of many of the types of firearms in this class is a "crime of violence" simply by dint of being in the class ——

_____

[33] Id. (quoting H. Rep. No. 1780, at 1 (1934)).

[34] 73 AM. JUR. 2d Statutes § 134 (2002).

13

and as we have never recognized an exception for any particular "member" of the class —— it stands to reason that unlawful possession of any firearm that is included in this class is also a "crime of violence."[35]  This is what is signified by the phrase continually repeated throughout the relevant jurisprudence that the unlawful possession of "any unregistered firearm" (of which a machine gun is one) is a "crime of violence."

## III.
## CONCLUSION

For purposes of § 4B1.2(a) of the Guidelines, unlawful possession of a machine gun is not materially distinguishable from unlawful possession of any or all other "firearms" identified in the NFA, or in other relevant gun-control statutes for that matter. Accordingly, the sentence imposed by the district court is vacated, and the case is remanded for resentencing, with Golding's prior conviction for unlawful possession of a machine gun to be classified under the Guidelines as a "crime of violence," producing a base offense level of 20.  And, as the "sporting exception" is inapplicable unless the base offense level is 14 or less, that exception could play no part in the resentencing calculus, even if it were otherwise applicable.

SENTENCE VACATED; CASE REMANDED for resentencing.

---

[35] Cf. Gregory v. Ashcroft, 501 U.S. 452, 465 (1991) (noting that under the statutory canon of noscitur a sociis, "a word is known by the company it keeps").

14