**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 15 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

KENNETH CHARLES ROGERS,

Defendant-Appellee.

No. 03-4153

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D. Ct. No. 1:03-CR-00027 TS)**

---

Barbara Bearnson, Assistant United States Attorney, District of Utah (Paul M. Warner, United States Attorney, District of Utah, with her on the brief), Salt Lake City, Utah, for Plaintiff/Appellant.

Michael J. Boyle, Boyle & Drage, P.C., Ogden, Utah, for Defendant/Appellee.

---

Before **TACHA** , Chief Circuit Judge,    **BRORBY** , Senior Circuit Judge, and **MURPHY** , Circuit Judge.

---

**MURPHY** , Circuit Judge.

# I. INTRODUCTION

The district court concluded that the United States was not entitled to an 18 U.S.C. § 3142 hearing to determine whether the defendant-appellee, Kenneth Rogers, should be detained pending trial on charges of possession of a firearm while subject to a protection order, in violation of 18 U.S.C. § 922(g)(8), and possession of a firearm following a misdemeanor conviction of domestic violence, in violation of 18 U.S.C. § 922(g)(9). According to the district court, the crimes set out in Rogers' indictment were not "crime[s] of violence" within the meaning of 18 U.S.C. § 3142(f)(1)(A). Thus, the United States was not entitled to a detention hearing. Upon consideration of the parties' briefs and submissions, this court concludes that violations of § 922(g)(8) and (g)(9) are "crime[s] of violence," entitling the United States to a detention hearing upon its request. Accordingly, exercising jurisdiction pursuant to 18 U.S.C. §§ 3145(c) and 3731 and 28 U.S.C. § 1291, this court **reverses** the district court's release order. The case is **remanded** to the district court to reinstate the findings it made following the detention hearing[1] and to order Rogers detained pending trial.

---

[1]As set out more fully below, the district court originally held an 18 U.S.C. § 3142 detention hearing in this case, found by clear and convincing evidence that Rogers was a danger to another person or to the community, and ordered Rogers detained pending trial. Upon Rogers' motion for reconsideration, however, the district court concluded that it should never have held a detention hearing in the first place because the crimes at issue in the case were not "crime[s] of violence."

(continued...)

## II. BACKGROUND

Rogers was indicted by a federal grand jury for possession of a firearm while subject to a protection order, in violation of 18 U.S.C. § 922(g)(8), and possession of a firearm following a misdemeanor conviction of domestic violence, in violation of 18 U.S.C. § 922(g)(9). At the government's request, a detention hearing was held pursuant to 18 U.S.C. § 3142(f)(1). After reviewing the Pretrial Services Report and considering the arguments of the parties presented at the detention hearing, a magistrate judge ordered Rogers detained pending trial. The magistrate judge specifically found that there was "a serious risk that the defendant will endanger the safety of another person or the community" based on Rogers' outstanding domestic protective orders.

After Rogers filed an objection to the magistrate judge's detention order, the district court held a hearing on the matter. In overruling Rogers' objection, the district court concluded as follows:

> The Court first notes that . . . the presumption is that a defendant be released pending trial, unless there is clear and convincing evidence that a defendant should be detained. In this case, the Court finds, consistent with [the magistrate judge's] findings, that there exists clear and convincing evidence that the defendant is a danger to a person or to the community, and should be detained. *Id.*

_____

[1](...continued)
*See* 18 U.S.C. § 3142(f)(1), (2) (setting out conditions under which a detention hearing is required upon request of the United States).

In determining whether to detain a defendant, the Bail Reform Act directs a court to consider, *inter alia*, the nature of the instant charged offense, the weight of the evidence against the defendant, and the defendant's history and characteristics. 18 U.S.C. § 3142(g). The statute also directs consideration of a defendant's past conduct and criminal history. *Id.* The Court finds that those factors all weigh in favor of detention of the defendant in this case.

The evidence at the hearing established that the defendant has had four separate protective orders arising out of domestic violence situations, by four different women. Three of those protective orders are still active. The defendant was convicted of domestic violence in 2002. The Court is concerned about the safety of the women who found it necessary to obtain the protective orders and is alarmed by the continued pattern of violence on the part of the defendant.

Having reviewed the [magistrate judge's] detention order *de novo*, the Court finds that there is clear and convincing evidence that the defendant is a danger to a person or to the community and should be detained. . . .

Shortly thereafter, Rogers moved for further review of the detention order. In his motion, Rogers asserted that the district court had erred in holding a detention hearing in the first instance because none of the six conditions precedent set out in § 3142(f)(1) and (2) to the holding of such a hearing were present in this case.[2] In response, the government asserted that the district court

---

[2]Pursuant to § 3142(f)(1), a detention hearing shall be held "upon motion of the attorney for the Government" in the following four situations: (1) the case involves a "crime of violence"; (2) the case involves an offense for which the maximum sentence is life imprisonment or death; (3) the case involves a violation of the Controlled Substances Act, the Controlled Substances Import and Export Act, or the Maritime Drug Law Enforcement Act, for which a maximum term of imprisonment of ten or more years is prescribed; and (4) the case involves any felony if the defendant has been convicted of two or more crimes of the types set out above, no matter whether the convictions were for federal, state, or local

(continued...)

should adopt the reasoning of the Second Circuit in *United States v. Dillard*, 214 F.3d 88 (2d Cir. 2000) and conclude that each of the weapon- possession crimes set out in Rogers' indictment were "crime[s] of violence" pursuant to § 3142(f)(1)(A). Concluding that *Dillard* was unpersuasive, the district court rejected the government's position that possessing a weapon while subject to a protection order or possessing a weapon following a misdemeanor conviction of domestic violence were "crime[s] of violence" for purposes of § 3142(f)(1)(A). Instead, the district court relied on the D.C. Circuit's decision in *United States v. Singleton*, 182 F.3d 7 (D.C. Cir. 1999) for the proposition that weapon-possession crimes are not crimes of violence. In particular, the district court concluded that "'nothing inherent in a § 922(g) offense creates a "substantial risk" of violence warranting pretrial detention.'" Dist. Ct. Order at 6 (quoting *Singleton*, 182 F.3d at 15).

---

[2](...continued)
offenses. Additionally, pursuant to § 3142(f)(2), a detention hearing shall be held "[u]pon motion of the attorney for the Government or upon the judicial officer's own motion" in the following two situations: (1) there is a serious risk that the defendant will flee; or (2) there is a serious risk that the defendant will obstruct or attempt to obstruct justice or will "threaten, injure, or intimidate, a prospective witness or juror" or attempt to do so.

# III. ANALYSIS

On appeal, the government contends the district court erred in concluding that possession of a firearm while subject to a domestic protection order and possession of a firearm following a misdemeanor conviction of domestic violence are not "crime[s] of violence" for purposes of the Bail Reform Act.[3] "This is a question of the construction and applicability of a federal statute that we review de novo." *United States v. Cisneros*, 328 F.3d 610, 613 (10th Cir. 2003).

Section 3142(f)(1)(A) of the Bail Reform Act provides that a detention hearing shall be held "upon motion of the attorney for the Government" in a case that involves a "crime of violence." The Bail Reform Act defines "crime of violence" as follows:

> (A) an offense that has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another;
> (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense; or
> (C) any felony under chapter 109A, 110, or 117 . . . .

---

[3]The government does not argue that the crimes at issue here fall within the parameters of any of the other three provisions of § 3142(f)(1) or that a detention hearing was required under the provisions of § 3142(f)(2). *See infra* note 2 (setting out provisions of § 3142(f)). Accordingly, this court focuses narrowly on whether the crimes at issue here are crimes of violence under § 3142(f)(1)(A) entitling the government to a detention hearing upon its request.

18 U.S.C. § 3156(a)(4). It is uncontested that the crimes at issue here do not fit within the definitions of "crime of violence" set out in § 3156(a)(4)(A) or (C). Accordingly, the question before this court is whether possession of a firearm while subject to a domestic protection order and possession of a firearm following a misdemeanor conviction of domestic violence are felonies that by their very nature involve a substantial risk that physical force may be used against the person or property of another in the course of committing the offense. *Id.* § 3156(a)(4)(B).[4]

It is clear that each of the crimes at issue here is a felony. *See* 18 U.S.C. § 3156(a)(3) (providing that the "term 'felony' means an offense punishable by a maximum term of imprisonment of more than one year"); *id.* § 924(a)(2) (providing that "[w]hoever knowingly violates subsection . . . (g) . . . of section 922 shall be . . . imprisoned not more than ten years").

---

[4]As noted by the Second Circuit, the elements of the definition in § 3156(a)(4)(B) are
- (i)   The offense must be a *felony*;
- (ii)   the offense must involve a "risk that physical force may be used against the person or property of another";
- (iii)   that risk must result from the nature of the offense;
- (iv)   the risk must be that the use of physical force would occur "in the course of" the offense; and
- (v)   the risk must be "substantial."

*United States v. Dillard*, 214 F.3d 88, 92-93 (2d Cir. 2000).

We likewise conclude that possession of a firearm while subject to a domestic protection order and possession of a firearm following a misdemeanor conviction of domestic violence both involve a substantial risk, resulting from the nature of the offense,[5] that physical force may be used against the person or property of another. "[I]t [is] undeniable that possession of a gun gives rise to *some* risk that the gun may be used in an act of violence. . . . Possession of a gun greatly increases one's ability to inflict harm on others and therefore involves some risk of violence." *Dillard*, 214 F.3d at 93. This is particularly true with

---

[5]Like the majority of the other courts to consider this question, this court concludes that the use of the term "by its nature" in § 3156(a)(4)(B) mandates a categorical approach to the determination of whether a given crime fits within § 3156(a)(4)(B)'s definition of crime of violence. *See United States v. Singleton*, 182 F.3d 7, 10-12 (D.C. Cir. 1999) (collecting cases); *see also Dillard*, 214 F.3d at 92 (noting that a categorical approach is most likely required by the terms of § 3156(a)(4)(B), but declining to definitively decide this question because it was not necessary to the resolution of the appeal). In other words, the possibility of force must result from the nature of the elements of the offense rather than from the particular way that the defendant allegedly committed the crime. Accordingly, this court does not consider the particular circumstances surrounding Rogers' alleged violations of § 922(g)(8) and (9). Instead, this court considers whether possession of a firearm while subject to a domestic protection order and possession of a firearm following a misdemeanor conviction of domestic violence, in their generic sense, involve a risk that physical force may be used against the person or property of another. This approach is perfectly consistent with our recent decision in *United States v. Lucio-Lucio*, 347 F.3d 1202, 1204 (10th Cir. 2003) (interpreting 18 U.S.C. § 16(b), which contains a definition of "crime of violence" identical to the definition in § 3156(a)(4)(B), as mandating the use of a "categorical approach, under which a court must only look to the statutory definition, not the underlying circumstances of the crime" (quotation omitted)).

regard to the crimes at issue in this case. A defendant whose background includes domestic violence which advances to either a criminal conviction or the imposition of a protection order has a demonstrated propensity for the use of physical violence against others. *See* 18 U.S.C. § 921(a)(33)(A) (providing that the term "misdemeanor crime of domestic violence . . . has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon"); *id.* § 922(g)(8) (defining a protection order as an order issued after notice and a hearing, which restrains a person from engaging in conduct "that would place an intimate partner in reasonable fear of bodily injury," and which includes either a finding that "such person represents a credible threat to the physical safety" of an intimate partner or "explicitly" restrains the person from engaging in conduct "that would reasonably be expected to cause bodily injury"); *see also United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001) (noting that protection orders that fit within the parameters of § 922(g)(8) are intended to protect a person from credible threats and physical force by the restrained party); *Gillespie v. City of Indianapolis*, 185 F.3d 693, 706 (7th Cir. 1999) (concluding Congressional finding that "convictions for domestic violence offenses reflect a propensity to inflict bodily harm upon others" was rational).

"The dangerousness of guns and their adaptability to use in violent crime is why Congress has prohibited their possession" by individuals subject to a

domestic protection order or convicted of a misdemeanor crime of domestic violence. *See Dillard*, 214 F.3d at 93. "Without possession of guns such persons are far less capable of committing acts of violence." *Id.* Furthermore, the prohibitions set out in § 922(g)(8) and (9) seek to protect society in general, and the intimate partners of persons with a background of domestic violence in particular, by reducing the risk of violence that may result from the possession of guns by persons with a proven propensity for violence. *Cf. id.* The possession of guns in violation of § 922(g)(8) and (9) increases the risk that individuals subject to a domestic protection order or convicted of a misdemeanor crime of domestic violence may engage in violent acts. *Cf. id.* That risk results from the nature of the offense and is undoubtedly substantial. *Cf. id.*

This court recognizes that Rogers asserts such a conclusion is completely at odds with the decision of the D.C. Circuit in *United States v. Singleton*, 182 F.3d 7 (D.C. Cir. 1999) and the Seventh Circuit in *United States v. Lane*, 252 F.3d 905 (7th Cir. 2001). Contrary to Rogers' assertions, however, this conclusion is not completely inconsistent with *Singleton* and *Lane*. *Singleton*, *Lane*, and *Dillard* all involve the question whether 18 U.S.C. § 922(g)(1), possession of a firearm by a convicted felon, is a crime of violence under the definition set out in § 3156(a)(4)(B). *Lane*, 252 F.3d at 906; *Dillard*, 214 F.3d at 89; *Singleton*, 182

F.3d at 9-10. This case, on the other hand, focuses on whether § 922(g)(8) and (9) are crimes of violence. This differing context is key.

In concluding that § 922(g)(1) is not a crime of violence under the terms of the Bail Reform Act, both *Singleton* and *Lane* conclude, *inter alia,* that § 922(g)(1) is not a crime of violence because the mere possession of a firearm by a convicted felon does not create a substantial risk that physical force will be used against the property or person of another. *Lane*, 252 F.3d at 906-07; *Singleton*, 182 F.3d at 14-15. In reaching this conclusion, both courts noted that large numbers of felonies involve economic, regulatory, or other crimes that do not entail physical violence at all. *Lane*, 252 F.3d at 906; *Singleton*, 182 F.3d at 14-15. Thus, both courts noted that although there might be *some* increased chance of violence flowing from the possession of a weapon by a felon, that risk could simply not be classified as *substantial*. *Lane*, 252 F.3d at 906-07; *Singleton*, 182 F.3d at 14-15.

As set out at some length above, however, the underlying actions leading to the prohibitions in § 922(g)(8) and (9) necessarily involve actual violence or credible threats of violence. This distinction is key to this court's conclusion that possession of a firearm while subject to a domestic protection order and possession of a firearm following a misdemeanor conviction of domestic violence both involve a substantial risk, resulting from the nature of the offense, that

-11-

physical force may be used against the person or property of another. This court

recognizes that the calculus of risk and whether that risk results from the nature

of the offense may well be different with regard to § 922(g)(1). We offer no

opinion on that question, however, because it is not before the court. Instead, we

limit our analysis to § 922(g)(8) and (9). Accordingly, read in context, this

opinion is not necessarily inconsistent with the decisions in *Singleton* and *Lane*.

The more difficult question is whether the substantial risk of physical force

created by the possession of a firearm in violation of § 922(g)(8) and (9) occurs in

"the course of committing" the weapon-offense. As to this question, we conclude

that the analysis of the court in *Dillard* is quite persuasive:

> If one uses a gun in an act of violence, that violence necessarily
> occurs during the possession of the gun. Whether the person has
> possession of the gun only for a few seconds—the seconds during
> which it is used for violent purposes—or has possession for years,
> but uses it violently only for a few seconds, the violent use in either
> case necessarily occurs during—or in the course of—the possession.
> If that possession is illegal because the possessor is a [prohibited
> person] who is forbidden from possessing a gun, the violent use will
> inevitably have occurred in the course of the commission of the
> offense of illegal possession.

214 F.3d at 93-94; *see also id.* at 94 n.5 ("The offense proscribed by section

922(g)(1) is not the felon's 'acquisition' of a firearm; it is the felon's possession

-12-

of a firearm. The offense continues to be committed as long as the felon continues to be in possession.").[6]

Our conclusion that possession of a firearm in violation of § 922(g)(8) and in violation of § 922(g)(9) are crimes of violence for purposes of the Bail Reform Act is not contrary to this court's decision in *United States v. Lucio-Lucio*, 347 F.3d 1202 (10th Cir. 2003). The defendant in *Lucio-Lucio* pleaded guilty to illegally re-entering the United States in violation of 8 U.S.C. § 1326. 347 F.3d at 1203. He had previously been deported twice. *Id.* The United States Sentencing Guidelines manual in effect at the time Lucio-Lucio was sentenced provided for an eight-level enhancement if the defendant had committed an "aggravated felony" prior to being deported. *See* U.S.S.G. § 2L1.2 (2002). The applicable definition of "aggravated felony" included a "crime of violence" as defined by 18 U.S.C. § 16. Section 16(b), in turn, defines crime of violence identically to the definition of crime of violence set out in 18 U.S.C. § 3156(a)(4)(B). Prior to his deportation, Lucio-Lucio had been convicted of

---

[6]In this particular regard, this opinion is inconsistent with both *Lane* and *Singleton*. In concluding that § 922(g)(1) is not a crime of violence under the terms of the Bail Reform Act, both courts held that the possibility of violence flowing from the illegal possession of a firearm is too attenuated from the possession to make the possession crime violent. *Lane*, 252 F.3d at 907-08; *Singleton*, 182 F.3d at 14. On this question, we simply find the Second Circuit's contrary analysis in *Dillard* far more persuasive, 214 F.3d at 93-94, 100 (2d Cir. 2000), and reject the analyses in *Lane* and *Singleton* in favor of the analysis in *Dillard*.

driving while intoxicated. 347 F.3d at 1203. Thus, the issue in *Lucio-Lucio* was whether felony driving while intoxicated was a "crime of violence."

In answering that question in the negative, *Lucio-Lucio* highlighted the requirement that the risk of physical force be used "in the course of committing the offense." *Id.* at 1205. According to *Lucio-Lucio*,

> For a use of force to be "in the course of committing the offense,"
> . . . it must be part of the course of action that the offender
> commits—and thus it, too, must be actively committed. [*See United
> States v. Chapa-Garza*, 243 F.3d 921, 927 (5th Cir. 2001)] ("section
> 16(b) refers only to that physical force that may be used to *perpetrate*
> the offense") (emphasis added); [*In re Ramos*, 23 I. & N. Dec. 336,
> 346 (BIA 2002)] (noting that cases have distinguished between
> crimes that risk violent conduct and those that merely risk harmful
> consequences by requiring the harm to come about through "action
> rather than inaction"); *United States v. Gracia-Cantu*, 302 F.3d 308,
> 312-13 (5th Cir.2002) (holding that injury to a child is not a crime of
> violence because "many convictions for this offense involve an
> omission rather than an intentional use of force"). Usually, this kind
> of active commission carries a connotation of at least some degree of
> intent, and we are persuaded that it does so here. [*See Bazan-Reyes v.
> INS*, 256 F.3d 600, 611 (7th Cir. 2001)]; *Chapa-Garza*, 243 F.3d at
> 927.
>
>   According to the legislative history, the paradigmatic offense
> that falls under § 16(b) is burglary. S.Rep. No. 98-225, at 307,
> *reprinted in* 1984 U.S.C.C.A.N. at 3486-87. There, what is risked is
> not just injury, but intentional violence committed by the offender in
> connection with the same general course of action. The burglar thus
> risks *committing* an act of violence in connection with the
> commission of the offense.
>
>   By contrast, a drunk driver typically does not mean to cause an
> accident at all, and can hardly be said to "commit" the resulting
> violence in the same way that a burglar does. Although the drunk
> driver recklessly risks harming others, the risk is not that this will
> happen intentionally (as in burglary). Rather, it is that the
> impairment of the driver's faculties will result in negligent driving,

which in turn will result in an accident. Thus, while burglary and DWI are similar in that they both recklessly risk harm, they differ greatly in the character of the act that immediately causes the harm. A burglar is reckless of the risk of committing an intentional act of violence; a drunk driver is reckless of the risk that he will accidentally cause harm. Whatever the precise degree of intent necessary to separate violent conduct from conduct that leads to harmful consequences, it seems plain that DWI resulting in an accident—which, when it happens, is a purely unintended result—falls into the latter category. Hence, DWI is not within the ambit of § 16(b). *See Bazan-Reyes*, 256 F.3d at 611-12 ("§ 16(b) is limited to crimes in which the offender is reckless with respect to the risk that *intentional* physical force will be used in the course of committing the offense.") (emphasis added); *United States v. Trinidad-Aquino*, 259 F.3d 1140, 1145 (9th Cir.2001) ("[A] defendant cannot commit a 'crime of violence' if he negligently—rather than intentionally or recklessly—hits someone or something with a physical object.").

347 F.3d at 1205-06.

The crimes at issue in this case, violations of § 922(g)(8) and (9), are much more like burglary, an example *Lucio-Lucio* identified as the "paradigmatic offense that falls under § 16(b)," than they are like driving while intoxicated. According to *Lucio-Lucio*, in a burglary "what is risked is not just injury, but intentional violence committed by the offender in connection with the same general course of action. The burglar thus risks *committing* an act of violence in connection with the commission of the offense." 347 F.3d at 1206. *Lucio-Lucio* further explained that in the case of burglary, the defendant "is reckless with respect to the risk that *intentional* physical force will be used in the course of committing the offense." *Id.* at 1206. Similarly, a person who has previously

-15-

committed domestic violence and thereafter possesses a weapon is reckless with respect to the risk that he might use the weapon as a means to inflict intentional physical force.[7] That is, in the words of *Lucio-Lucio*, "A [person possessing a weapon in violation of § 922(g)(8) or (9)] is reckless of the risk of committing an intentional act of violence; a drunk driver is reckless of the risk that he will accidently cause harm." *See id.* at 1206.

For those reasons set out above, this court concludes that § 922(g)(8) and (9) are crimes of violence for purposes of the Bail Reform Act. Thus, in contrast to the conclusion of the district court, the government was entitled to a detention hearing upon its request. 18 U.S.C. § 3142(f)(1)(A). Although the district court ultimately concluded that the government was not entitled to a detention hearing,

---

[7]We recognize that *Lucio-Lucio* stated in broad terms that the requirement "[t]hat the violence be committed intentionally or close to intentionally is a necessary condition, not a sufficient one. Of course, the phase 'in the course of the offense' also suggests that the risked violence must have some nexus to the offense conduct; an offense that increases the likelihood of intentional violence long after the offense conduct is over may still fall outside of the § 16(b) definition." 347 F.3d at 1206 n.5 (citing *Lane*, 252 F.3d at 907). These statements are, however, dicta. The *Lucio-Lucio* court was not faced with an offense that increased the likelihood of *intentional* violence. Instead, as it specifically noted, the case before it involved reckless or negligent behavior. *Id.* at 1206. The crimes in this case do involve a substantial risk that intentional violence will be employed during the commission of the offense. Furthermore, as explained above, the crimes at issue here are ongoing; as long as the prohibited person possesses the weapon, he is in violation of § 922(g)(8) or (9). Thus, any intentional violence perpetrated by the prohibited person necessarily has a nexus to the violation of § 922(g)(8) or (9). The obiter in footnote five of *Lucio-Lucio* does not foreclose the result in this case.

it originally held such a hearing and found, by clear and convincing evidence, that Rogers presented a danger to another person or the community. Rogers does not challenge that finding on appeal, relying instead exclusively on the assertion that the government was never entitled to a hearing because the offenses at issue are not crimes of violence for purposes of the Bail Reform Act. Having rejected that contention, this court **REVERSES** the district court and **REMANDS** the matter to the district court to reinstate its original findings and to order Rogers detained pending trial pursuant to the terms of 18 U.S.C. §§ 3142 and 3143.[8]

---

[8]During the pendency of this appeal, the district court suppressed the firearms underlying the charges in this case. The government filed an appeal of the district court's suppression order pursuant to 18 U.S.C. § 3731. 18 U.S.C. § 3143(c) provides that in such circumstances the district court is to treat the defendant "in accordance with section 3142 of this title." In accordance with the stay previously issued by this court and with § 3143(c), Rogers has remained in detention pending the resolution of the government's appeal of the district court's suppression order.