FILED
**United States Court of Appeals**
**Tenth Circuit**

**May 28, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BARRY B. JACKSON, JR.,

    Defendant - Appellant.

No. 23-6047

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:22-CR-00059-D-1)**
_____

David B. Autry, Oklahoma City, Oklahoma, for Defendant – Appellant.

Steven W. Creager, Assistant United States Attorney (Robert J. Troester, United States Attorney, and Jacquelyn M. Hutzell, Assistant United States Attorney, with him on the briefs), Oklahoma City, Oklahoma, for Plaintiff – Appellee.

_____

Before **ROSSMAN**, **KELLY**, and **MURPHY**, Circuit Judges.
_____

**MURPHY**, Circuit Judge.
_____

## I.    INTRODUCTION

After the district court denied his motion to declare 18 U.S.C. § 922(g)(9) unconstitutional, Barry Jackson pleaded guilty to one count of illegally possessing two firearms as a domestic violence misdemeanant. Following the commission of the

offense of conviction but before pleading guilty, Jackson was found in possession of three additional firearms, one of which was loaded with a large-capacity magazine.

At sentencing, the district court determined Jackson's two separate instances of firearm possession were part of the same course of conduct and, thus, constituted relevant conduct. Accordingly, the calculation of Jackson's advisory United States Sentencing Guidelines range was based on offense conduct involving five firearms, one of which was capable of accepting a large-capacity magazine. On appeal, Jackson challenges both the judgment of conviction and the reasonableness of his sentence.

Jackson's conviction is consistent with the principles laid out by the Supreme Court, *see United States v. Rahimi*, 602 U.S. 680 (2024), and this court's precedent, *see United States v. Rogers*, 371 F.3d 1225 (10th Cir. 2004). The district court did not err in its relevant-conduct determination. Therefore, exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), this court **affirms** the district court's judgment of conviction and sentence.

## II.     BACKGROUND

On December 30, 2021, reacting angrily to what he perceived as aggressive driving, Jackson fired multiple gunshots at another vehicle on the John Kilpatrick Turnpike in Oklahoma. The victims reported seeing a man—later identified as Jackson—pointing and shooting a handgun at them from the passenger seat of a white vehicle. Based on reports from a third-party witness to the incident, officers were able to locate and stop the white vehicle. There were five individuals inside: Jackson,

his wife, and three minor children. Upon a search, officers found two 9mm handguns inside the backpack of one of the children. After waiving her *Miranda* rights, Jackson's wife told the officers it was Jackson who shot at the other vehicle. Due to a prior domestic violence misdemeanor conviction, Jackson was indicted on a single count of unlawfully possessing two firearms in violation of § 922(g)(9).[1] A warrant for his arrest was issued.

On April 20, 2022, Jackson was arrested on the federal charge in a Tulsa residence in which he lived. In executing the arrest warrant, law enforcement officers observed a shotgun propped against a wall. Jackson waived his *Miranda* rights and told officers the shotgun was in his wife's name and kept for protection. Law enforcement returned to the residence later that day with a search warrant. A search of the residence uncovered, among other things, three additional firearms, one of which was a pistol loaded with a large-capacity magazine.

Jackson filed a motion to declare 18 U.S.C. § 922(g)(9) unconstitutional and dismiss his indictment. His motion was denied. *See generally United States v. Jackson*, 622 F. Supp. 3d 1063 (W.D. Okla. 2022). Jackson pleaded guilty thereafter, without a plea agreement.

The Presentencing Investigation Report ("PSR") determined Jackson's possession of firearms on the day of his arrest was conduct relevant to the offense of

---

[1] Following the incident, Jackson was charged in Oklahoma state court for use of a vehicle in discharge of a weapon. *See* Okla. Stat. tit. 21, § 652. He eventually pleaded guilty to the charge.

his conviction. The PSR recommended a Guidelines range which reflected this determination: The base offense level was calculated to be twenty because Jackson had possessed a firearm capable of accepting a large-capacity magazine. *See* U.S.S.G. § 2K2.1(a)(4)(B). The offense level was further increased by two because Jackson's offense was determined to involve five firearms. *See* U.S.S.G. § 2K2.1(b)(1)(A). Jackson objected to the PSR's relevant-conduct determination, arguing the firearms found on April 20, 2022, were not connected to the offense of conviction.

At sentencing, the district court overruled Jackson's objections and adopted the Guidelines range recommended by the PSR. The district court reasoned Jackson's conduct in possessing firearms at the time of his arrest was the same status-based offense as the offense of conviction. Hence, the two incidents were determined to be parts of the same course of conduct and, thereby, constituted relevant conduct. Combined with other enhancements and adjustments not at issue on this appeal, the district court concluded Jackson's Guidelines range was 63 to 78 months. He was ultimately sentenced to serve a 72-month term of imprisonment.

## III.   DISCUSSION

### A. Second Amendment Challenge

Jackson challenges the constitutionality of § 922(g)(9) under the Second Amendment. Although he pleaded guilty to the charge, Jackson preserved his constitutional challenge to § 922(g)(9) by raising it in the district court. *Class v. United States*, 583 U.S. 174, 178 (2018).

"Challenges to the constitutionality of a statute are reviewed de novo." *United States v. Lynch*, 881 F.3d 812, 817 (10th Cir. 2018). "The court begins its review with the presumption that the statute is constitutional." *Id.*

1. Nature of the Challenge

Jackson moved the district court to declare "§ 922(g)(9) is facially unconstitutional" and to dismiss his indictment as a charge under an unconstitutional statute. *Jackson*, 622 F. Supp. 3d at 1065. During oral argument on appeal, his counsel similarly claimed to be raising a facial challenge by which he sought to vacate his conviction.[2]

A facial challenge "is the most difficult challenge to mount successfully because it requires a defendant to establish that no set of circumstances exists under which the [challenged statute] would be valid." *Rahimi*, 602 U.S. at 693 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)); *see Salerno*, 481 U.S. at 745 (holding the overbreadth doctrine has not been recognized outside the context of the

---

[2] To be sure, during oral argument on appeal, Jackson also claimed to be raising what he called an "implied" as-applied challenge. He raised an as-applied challenge for the first time, however, in his supplemental briefing which was filed after this court lifted the abatement in the matter pending the Supreme Court's issuance of a decision in *United States v. Rahimi*, 602 U.S. 680 (2024). This belated challenge is contrary to the clear and solitary facial challenge he had raised at the district court. *See United States v. Jackson*, 622 F. Supp. 3d 1063, 1065 (W.D. Okla. 2022) ("Defendant seeks a determination that § 922(g)(9) is facially unconstitutional . . . and, if successful, he seeks a dismissal of the charge against him under an unconstitutional statute."). Jackson does not object to the district court's construction of the nature of his challenge.

First Amendment). To prevail, the government only needs to demonstrate § 922(g)(9) is "constitutional in some of its applications." *Rahimi*, 602 U.S. at 693.

In this case, the government prevails by demonstrating the statute is "constitutional as applied to the facts of [the defendant's] own case." *Id.* "The fact that the [challenged statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Salerno*, 481 U.S. at 745. Because § 922(g)(9) withstands the as-applied challenge, it necessarily survives his facial challenge as well. *Rahimi*, 602 U.S. at 693.

### 2. *Bruen* Test

The Second Amendment provides "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. "[T]he Second Amendment confers an individual right to keep and bear arms." *District of Columbia v. Heller*, 554 U.S. 570, 622 (2008). Although this right is "fully applicable to the States," *McDonald v. City of Chicago*, 561 U.S. 742, 749 (2010), it is not "unlimited," *Heller*, 554 U.S. at 626.

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the Supreme Court held that the scope of the individual right to keep and bear arms is determined by analyzing constitutional text and history. *See id.* at 17-19 (interpreting *Heller*). The analysis is conducted through a two-part, burden-shifting test. At the first step, the party asserting the right must establish the plain text of the Second Amendment covers their conduct. *See id.* at 17. Failure to so establish amounts to a failure to present a claim of a Second Amendment violation. *See id.* If the

challenging party is successful, however, the burden shifts to the government to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24. If the challenged regulation fits within the nation's "historical tradition of firearm regulation," it is lawful under the Second Amendment. *Id.*

### a. *Holding of* Rahimi

Following *Bruen*, the Supreme Court in *Rahimi* addressed a constitutional challenge to 18 U.S.C. § 922(g)(8). 602 U.S. at 685-86. Section 922(g)(8) prohibits the possession of a firearm while subject to a domestic violence restraining order. To be prosecuted under § 922(g)(8), an individual must be subject to a restraining order that 1) was issued after a hearing for which the individual received actual notice and had an opportunity to participate; 2) restrains the individual from harassing, stalking, or threatening an intimate partner or a child of the intimate partner; and 3) includes a finding that the individual represents a credible threat to the physical safety of such intimate partner or child. *See* 18 U.S.C. § 922(g)(8)(A)-(C); *see also Rahimi*, 602 U.S. at 688.

*Rahimi* held § 922(g)(8) withstands the *Bruen* two-part test because this nation's "tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." 602 U.S. at 700.[3] The

---

[3] Section 922(g)(8) provides two independent bases for liability. *See* 18 U.S.C. § 922(g)(8)(C)(i), (ii). The Supreme Court limited its analysis to § 922(g)(8)(C)(i),

Court identified "two distinct legal regimes" that regulated individuals who physically threatened others with firearms: surety laws and "going armed" laws. *Id.* at 695, 697.

Surety laws were invoked as a "preventive" measure against all forms of violence. *Id.* at 695-96 (explaining the applicability of surety laws against spousal abuse and misuse of firearms). Upon a complaint establishing reasonable fear of violence, judicial officers were empowered to order the accused to post bond. *See id.* at 696-97.

"Going armed" laws, on the other hand, represented a restriction upon those who had threatened others with firearms. *See id.* at 697. Going armed laws proscribed "riding or going armed, with dangerous or unusual weapons, [to] terrify[]" others. *Id.* (quotation omitted). Those who violated going armed laws could be ordered to forfeit their firearms. *See id.*

Although neither surety nor going armed laws were "dead ringers" or "historical twins" of § 922(g)(8), *id.* at 692, they were "relevantly similar" in ways which illustrated the traditional "principles that underpin our regulatory tradition," *id.* at 698. Taken together, the Court explained, these laws established the tradition of disarming those "found by a court to pose a credible threat to the physical safety of another." *Id.* at 702.

---

declining to address "whether regulation under Section 922(g)(8)(C)(ii) was also permissible." *Rahimi*, 602 U.S. at 693.

The *Rahimi* Court then held the application of § 922(g)(8) to the defendant, Zackey Rahimi, was consistent with these principles. *See id.* at 698-700. Rahimi was subject to a restraining order which satisfied the requirements of § 922(g)(8). *See id.* at 688-89. The Court held Rahimi's restraining order was a "judicial determination" that he "represent[ed] a credible threat to the physical safety of another." *Id.* at 698-99 (quotation omitted). Rahimi's penalty was consistent with historical tradition because "going armed laws provided for imprisonment" and "if imprisonment was permissible," the "lesser restriction" of temporary disarmament was also permissible. *Id.* at 699; *see id.* (observing Rahimi would only be disarmed while his restraining order was active).

### b. Bruen *Test – First Step*

The inquiry at the first step of the *Bruen* test comprises three elements: "(1) whether the challenger is part of the people whom the Second Amendment protects, (2) whether the item at issue is an arm that is in common use today for self-defense, and (3) whether the proposed course of conduct falls within the Second Amendment." *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 114 (10th Cir. 2024) (quotations omitted). The text of the Second Amendment is given its "[n]ormal meaning," as it would have been understood by "ordinary citizens in the founding generation." *Id.* (quotation omitted); *see Heller*, 554 U.S. at 634-35 ("Constitutional rights are enshrined with the scope they were understood to have when people adopted them . . . ."). The reach of the Second Amendment may nevertheless extend to modern contexts and applications. *See Heller*, 554 U.S. at 582 ("[T]he Second

Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding."); *Rocky Mountain Gun Owners*, 121 F.4th at 114.

The government concedes the Second Amendment's plain text covers Jackson's conduct. First, "[t]he people, as referred to in the Second Amendment, denotes a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *Rocky Mountain Gun Owners*, 121 F.4th at 114 (quotation omitted). This includes Jackson, who is a United States citizen. *See id.* at 116-17. His prior criminal convictions do not exclude him from the being a member of the political community. *See id.* at 116; *see also Rahimi*, 602 U.S. at 701.[4] Second, pistols, the possession of which led to Jackson's conviction, fall squarely within the Second Amendment's definition of "arms." *See Bruen*, 597 U.S. at 32. Finally, in his motion to declare § 922(g)(9) unconstitutional, Jackson affirmatively asserted his inherent right to possess a weapon for self-defense. The United States did not contest that assertion or claim the issue of intent was factual in nature and subject to the corresponding burdens of proof. *See Jackson*, 622 F. Supp. 3d at 1066. The "inherent

---

[4] Neither party presents any reason that domestic violence convictions should be treated any differently at this step. The Supreme Court presumed, without any analysis, persons with an outstanding domestic violence restraining order were part of the people. *See id.* at 708 (Gorsuch, J., concurring) (recognizing how "no one question[ed]" that possession of a firearm by individuals against whom there is a domestic violence restraining order is conduct covered by the text of the Second Amendment).

right of self-defense [is] central to the Second Amendment right." *Heller*, 554 U.S. at 628.

### c. Bruen *Test – Second Step*

The government, at this second step, bears the burden of establishing § 922(g)(9), as applied to Jackson, is consistent with the "principles that underpin" this nation's regulatory tradition. *Rahimi*, 602 U.S. at 692. "Why and how the regulation burdens the right are central to this inquiry." *Id.*

"Domestic violence often escalates in severity over time, and the presence of a firearm increases the likelihood that it will escalate to homicide." *United States v. Castleman*, 572 U.S. 157, 160 (2014) (citations omitted). Felon disarmament laws, however, were not effective in preventing domestic abusers from accessing firearms because, "notwithstanding the harmfulness of their conduct," many perpetrators were convicted of only misdemeanors or not charged at all. *Voisine v. United States*, 579 U.S. 686, 689 (2016); *see United States v. Hayes*, 555 U.S. 415, 426 (2009). Congress enacted § 922(g)(9) to close this "dangerous loophole." *Hayes*, 555 U.S. at 426 (quotation omitted).

In *Rogers*, this court analyzed the bases for § 922(g)(9) and § 922(g)(8)'s limitations on an individual's Second Amendment rights. *See* 371 F.3d at 1230. The "possession of a firearm while subject to a domestic protection order and possession of a firearm following a misdemeanor conviction of domestic violence *both* involve a substantial risk . . . that physical force may be used against the person or property of another." *Id.* at 1228 (emphasis added). Those whose "background includes domestic

violence which advances to either a criminal conviction or the imposition of a protection order [have] a demonstrated propensity for the use of physical violence against others." *Id.* at 1228-29. These "credible threats of violence" led to the Second Amendment "prohibitions [set forth] in § 922(g)(8) and (9)." *Id.* at 1230. Under *Rogers*, the reason § 922(g)(9) burdens an individual's Second Amendment right is therefore relevantly similar to that of § 922(g)(8): to disarm those who pose a clear threat of physical violence to another. *See id.*; *Rahimi*, 602 U.S. at 698; s*ee also Bruen*, 597 U.S. at 3 (explaining analogical reasoning).

Section 922(g)(9) makes it "unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence . . . to . . . possess in or affecting commerce, any firearm or ammunition." "Misdemeanor crime of domestic violence," in turn, is defined as "a misdemeanor under Federal, State, Tribal, or local law" which has an element of "use or attempted use of physical force, or the threatened use of a deadly weapon," 18 U.S.C. § 921(a)(33)(A), by a "person with a specified domestic relationship with the victim," *Voisine*, 579 U.S. at 689. Section 922(g)(9) does not disarm those whose domestic violence misdemeanor convictions were expunged, set aside, or pardoned, unless the expungement or pardon expressly prevents access to firearms. *See* 18 U.S.C. § 921(a)(33)(B)(ii).

Although his indictment references a single conviction of misdemeanor domestic violence, Jackson's criminal history reflects two separate convictions. First, he was charged after grabbing the neck of his domestic partner following an altercation. He applied enough force in his grip to leave visible lacerations on the

victim's neck. Before a state court, Jackson pleaded nolo contendere and was convicted of misdemeanor domestic battery under Kansas law. In the second instance, Jackson was charged with misdemeanor domestic assault and battery under Oklahoma law after he punched the face of a woman he was dating, while she was holding the couple's minor child. He was convicted after pleading guilty before a state court.

Both convictions represent "judicial determinations" Jackson engaged in violence against a family member or an intimate partner. *Rahimi*, 602 U.S. at 698-99. Jackson's acts of domestic violence and his subsequent convictions demonstrate his "propensity for the use of physical violence against others." *Rogers*, 371 F.3d at 1229. By possessing a firearm, Jackson poses a "substantial risk" of using physical force against the person or property of another. *Id.* at 1228. Section 922(g)(9) restrictions are for the purpose of mitigating "demonstrated threats of physical violence." *Rahimi*, 602 U.S. at 699. Jackson was disarmed for reasons consistent with this nation's tradition of firearm regulation.

Section 922(g)(9) prohibited Jackson from possessing a firearm unless and until one of the conditions identified in § 921(a)(33)(B)(ii) was satisfied. Given the various ways by which his Second Amendment right may be restored, Jackson's penalty was conditional, and not necessarily permanent. *See United States v. Gailes*, 118 F.4th 822, 829 (6th Cir. 2024) (explaining, for the same reason, the "purported permanent ban in § 922(g)(9) may not always be so"). His conditional disarmament is clearly a "lesser restriction" than a permanent ban, the constitutionality of which was

13

upheld by this court post-*Rahimi*. *See Vincent v. Bondi*, 127 F.4th 1263, 1266 (10th Cir. 2025). The burden imposed by § 922(g)(9) is consistent with the nation's tradition of firearm regulation. In sum, § 922(g)(9), as applied to Jackson, is "relevantly similar to [the] founding era regimes in both why and how it burdens [his] Second Amendment right." *Rahimi*, 602 U.S. at 698. Section 922(g)(9) therefore survives Jackson's constitutional challenge.

Jackson raises several arguments to the contrary. He first argues § 922(g)(9) lacks relevant historical analogues because there is no tradition of disarming misdemeanants. Drawing a categorical distinction between felons and misdemeanants, he claims the district court erred by relying on dicta from *Heller* which recognized the "longstanding prohibition" of disarming felons. 554 U.S. at 626-27. Put differently, Jackson's position is that there must be a historical tradition of disarming misdemeanants for § 922(g)(9) to be constitutional as applied to him. This argument fails to analyze the "principles underlying the Second Amendment," and erroneously points out the lack of a "historical twin." *Rahimi*, 602 U.S. at 692. Jackson's argument is at odds with *Rahimi* which recognized § 922(g)(8) was "by no means identical" to surety or going armed laws but found them to be relevantly similar. *Id.* at 698. Even in the absence of identical historical antecedents, § 922(g)(9) may be constitutionally applied to Jackson if consistent with the principle of disarming individuals who pose "a clear threat of physical violence to another." *Id.*

Jackson also asks this court to adopt a construction of *Rahimi* in which only those presenting an immediate threat to the physical safety of others may be

14

disarmed. This position does not find support in *Rahimi* which, in declining to "undertake an exhaustive historical analysis," held "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Id.* at 702. Nothing about this holding suggests only those posing an immediate threat may be disarmed.[5]

To the extent that Jackson asserts his conviction should be treated differently from other misdemeanor domestic violence convictions, such an argument also falls short. In *Vincent*, this court upheld the constitutionality of § 922(g)(1), which disarms convicted felons. *See* 127 F.4th at 1264. *Vincent* squarely rejected the argument that those who are convicted of nonviolent felonies could not constitutionally be disarmed, thereby refusing to draw "constitutional distinctions" based on the nature of the offense underlying the conviction. *Id.* at 1266; *see United States v. Jackson*, 110 F.4th 1120, 1125 (8th Cir. 2024) (concluding "that there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)"). In an

---

[5] Indeed, Congress intended § 922(g)(9) to operate as a preventive measure to curb the escalation of the severity of domestic violence to homicides. *See United States v. Castleman*, 572 U.S. 157, 160 (2014) (holding domestic violence has a tendency to escalate over time); *United States v. Hayes*, 555 U.S. 415, 426 (2009) ("Firearms and domestic strife are a potentially deadly combination nationwide."); *see also Rahimi*, 602 U.S. at 695 (explaining surety laws also functioned as a form of "preventive justice"). To limit the scope of § 922(g)(9) to only those defendants who pose an immediate threat would be inconsistent with the purpose of the provision.

Even supposing, solely for the sake of argument, that only those who pose an immediate threat could be disarmed, the record facts do not favor Jackson. He fired multiple gunshots at another vehicle on the road and hid firearms in a minor's backpack.

unpublished opinion, this court similarly rejected the contention that "§ 922(g)(9) allows for individual assessments of the risk of violence." *In re United States*, 578 F.3d 1195, 1200 (10th Cir. 2009) (citing *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009) (unpublished disposition attached as an appendix to a published dissent).[6] Regardless of the supposed remoteness of the offense or the absence of a firearm in the underlying conduct, Jackson remains a convicted domestic violence misdemeanant.

## B. Reasonableness of the Sentence

Next, Jackson challenges the procedural and substantive reasonableness of his sentence. Because he raised his objections at the district court, his sentence is reviewed "under an abuse of discretion standard for procedural and substantive reasonableness." *United States v. Lucero*, 747 F.3d 1242, 1246 (10th Cir. 2014).

Procedural reasonableness "requires, among other things, a properly calculated Guidelines range." *United States v. Saavedra*, 523 F.3d 1287, 1289 (10th Cir. 2008). "When evaluating the district court's interpretation and application of the Sentencing Guidelines, we review legal questions de novo and factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Zamora*, 97 F.4th 1202, 1207-08 (10th Cir. 2024) (quotation omitted). Substantive reasonableness, on the other hand, requires the sentence to be "reasonable given all the circumstances of the case in light of the factors set forth in

---

[6] *In re United States*, 578 F.3d 1195 (10th Cir. 2009) (unpublished) is cited as a persuasive, but not precedential, authority. 10th Cir. R. 32.1(A).

16

18 U.S.C. § 3553(a)." *United States v. Chavez*, 723 F.3d 1226, 1233 (10th Cir. 2013) (quotation omitted). A sentence is substantively unreasonable if it "exceed[s] the bounds of permissible choice, given the facts and the applicable law." *Id.* (quotation omitted).

Although Jackson disputes multiple aspects of his sentence, the basis for his dispute boils down to a single issue. He argues the district court erred by determining his possession of the firearms on the day of his arrest was conduct relevant to the offense of his conviction. Jackson asserts this purported error resulted in a procedurally unreasonable sentence because it led to an improperly calculated Guidelines range. He also argues his resulting sentence was substantively unreasonable because it, being based on an incorrectly high Guidelines range, went unreasonably beyond what a correct Guidelines range would recommend.

The district court's factual findings supporting the determination of relevant conduct is reviewed for clear error; however, the "ultimate determination of relevant conduct" is reviewed de novo. *United States v. Damato*, 672 F.3d 832, 838 (10th Cir. 2012).

The district court determined Jackson's possession of multiple firearms—including one capable of accepting a large-capacity magazine—to be relevant conduct. *See* U.S.S.G. § 1B1.3. The district court explained Jackson kept firearms at the residence as part of the same course of conduct as his offense of conviction. *See* U.S.S.G. § 1B1.3 cmt. n.5(B)(ii). According to the district court, Jackson "repeated" the same status-based offense within four months of the offense of conviction.

17

Jackson argues the district court erred because there is not a sufficient nexus between the two instances of conduct. He insists the firearms found at the residence were not related to his offense of conviction and claims four months is sufficient enough time to dissociate these two occurrences. He, however, does not contest the district court's finding that he, in fact, possessed the three firearms. The government responds by pointing to the factual similarity between the two instances of conduct. It also notes how the two instances were separated only by a short period of time.

Determination of relevant conduct is based on "whether there is a strong relationship between the uncharged conduct and the convicted offense." *United States v. Allen*, 488 F.3d 1244, 1255 (10th Cir. 2007) (quotation omitted). The government must demonstrate, by a preponderance of the evidence, "a significant similarity, regularity, and temporal proximity" between the uncharged conduct and the offense of conviction. *Id.* (quotation omitted). In the absence of one of these factors, "a stronger presence of at least one of the other factors is required." U.S.S.G. § 1B1.3 cmt. n.5(B)(ii).

Possession of other firearms is conduct significantly similar to a misdemeanant-in-possession charge. *See United States v. Garcia*, 946 F.3d 1191, 1204 (10th Cir. 2020). As a defendant convicted of a § 922(g)(9) crime, Jackson's "additional instances of firearm possession may be found 'not merely similar but identical.'" *See id.* (quoting *United States v. Windle*, 74 F.3d 997, 1000 (10th Cir. 1996)). A gap of four months, which separated the offense of conviction and the discovery of additional firearms upon Jackson's arrest, is not too remote for a same-

course-of-conduct determination. *See id.* at 1210 (holding a gap of one year between instances of conduct was not too remote). The "minimum requirement" of regularity, which is "two instances of conduct," is also satisfied here. *United States v. Svacina*, 137 F.3d 1179, 1183 (10th Cir. 1998); *see also Garcia*, 946 F.3d at 1206-07 (acknowledging the likelihood the defendant possessed a firearm "each and every day" during the time between the purported relevant conduct and the offense of conviction). Thus, the district court did not err in determining Jackson's possession of firearms at the residence was relevant conduct.

All three of Jackson's challenges to the reasonableness of his sentence fail as a result. The district court did not abuse its discretion by calculating Jackson's base offense level to be twenty upon its assessment that, as part of his offense, he possessed a firearm capable of accepting a large-capacity magazine. *See* U.S.S.G. § 2K2.1(a)(4)(B). Nor did the district court abuse its discretion by further increasing the offense level by two based on its assessment that his offense involved five firearms. *See* U.S.S.G. § 2K2.1(b)(1)(A). Because Jackson fails to establish the Guidelines range was incorrectly calculated, his sentence falls within the range as determined by the district court. "A within-guideline-range sentence that the district court properly calculated is entitled to a rebuttable presumption of reasonableness on appeal." *United States v. Wireman*, 849 F.3d 956, 964 (10th Cir. 2017) (quotation omitted). Because Jackson does not raise any arguments to rebut this presumption, his substantive challenge falls short.

IV.    **CONCLUSION**

The judgment of conviction and sentence of the district court are **affirmed**.