**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 16, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DARRIUS DEANGELO JACKSON,

    Defendant - Appellant.

No. 25-6052
(D.C. No. 5:24-CR-00368-J-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **PHILLIPS**, **McHUGH**, and **EID**, Circuit Judges.

_____

This appeal asks us to review the legality of a sentence imposed after a conviction for a firearms violation. Specifically, Darrius Jackson challenges two sentencing enhancements imposed under U.S.S.G. § 2K2.1(a)(1) and (b)(1)(A). Whether the enhancements apply depends on whether Jackson's relevant conduct includes the associated unlawful acts of his criminal cohorts. We agree with the district court that it does. So we affirm the court's decision to apply both enhancements.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND[1]

In 2024, agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) began investigating Jaylen Benford for illegally selling firearms. On August 12, 2024, with the help of a confidential informant (CI), ATF agents arranged a meeting with Benford. Acting undercover as firearms buyers, the agents picked up Benford in their unmarked car. Benford called his associates and arranged for them to sell firearms to the agents. A car carrying six men soon met the awaiting agents.

First out of the car was Danez Beach, who sold the agents a black Glock handgun. Significantly for § 2K2.1(a)(1) purposes, this handgun had an installed machinegun-conversion device and a 50-round drum magazine (an unregistered firearm under 26 U.S.C. § 5845(a)). Second out was Taylor Holley, who sold the agents a Ruger .40 caliber pistol for $400. After the second sale, Darrius Jackson got out of the car, and Holley handed him the $400, saying, "here's four for your strap."[2] R. vol. II at 3.

---

[1] As stated in its Statement of Reasons, the district court adopted Jackson's Presentence Report (PSR) "without change." On appeal, Jackson does not contest the factual recitation in the PSR. So we rely on the PSR's undisputed facts to resolve this appeal.

[2] The agents had concocted a story that they were taking the purchased firearms to Kansas City for resale. After hearing that, Jackson entered the agents' car to examine its hidden compartment for the supposed transportation of firearms. During that time, the agents saw that the other men still inside the sellers' car were armed.

The next day, August 13th, the CI called Beach about purchasing more firearms. After the call, Beach and Jackson walked together to a 7-Eleven store to sell more firearms to the agents.

At this location, Beach sold another firearm that implicated § 2K2.1(a)(1). This time Beach sold the agents an Anderson Manufacturing AM-15 multi-caliber pistol that was equipped with a large-capacity magazine. During this same encounter, Jackson sold the agents a Springfield Armory XD-9 pistol. Moreover, Jackson mentioned that he could sell the agents machinegun conversion devices for $250.

In September 2024, a federal grand jury indicted Jackson on a single count of felon in possession of a firearm. *See* 18 U.S.C. § 922(g)(1). The indictment charged that "[o]n or about August 13, 2024," Jackson knowingly possessed a firearm (the Springfield Armory pistol) despite having a prior felony conviction. R. vol. I at 1–2. In November 2024, Jackson pleaded guilty to this charge.

In January 2025, the probation office filed a presentence report (PSR), followed by an Addendum responding to Jackson's objections. The revised PSR set a base offense level of 26 under U.S.S.G. § 2K2.1(a)(1). This offense level resulted from Jackson's having two previous crimes of violence[3] and from the

---

[3] In his initial briefing, Jackson contended that his prior Oklahoma conviction for assault and battery by strangulation did not qualify as a crime of violence under U.S.S.G. § 4B1.2(a)(1), but he later withdrew this argument. Aplt. Reply Br. at 7–8.

probation officer's determination that Jackson's offense involved (meaning his relevant conduct included) a semiautomatic firearm "with a large capacity magazine" (Beach's sale on August 13th) and a "firearm described in 26 U.S.C. § 5845(a)" (Beach's sale on August 12th). R. vol. II at 4. Either of the two firearms sufficed for the U.S.S.G. § 2K2.1(a)(1) enhancement. In addition, Jackson received two more offense levels under U.S.S.G. § 2K2.1(b)(1)(A) because his offense involved three or more firearms. After a three-level reduction under § 3E1.1 for timely acceptance of responsibility, the PSR recommended a total offense level of 25 and a criminal-history category of IV. That yielded an advisory guideline range of 84 to 105 months of imprisonment, from which the district court varied downward to impose 60 months.

## DISCUSSION

"We review the district court's legal conclusions under the Sentencing Guidelines de novo and its findings of fact for clear error, giving great deference to the district court's application of the Guidelines to the facts." *United States v. Cifuentes-Lopez*, 40 F.4th 1215, 1218 (10th Cir. 2022) (citations modified). "[T]he ultimate determination of relevant conduct is reviewed de novo." *United States v. Jackson*, 138 F.4th 1244, 1256 (10th Cir. 2025) (citation modified). A district court abuses its discretion if it bases its ruling on a clearly erroneous fact finding. *United States v. Munoz*, 812 F.3d 809, 817 (10th Cir. 2016).

4

As for the disputed U.S.S.G. § 2K2.1(a)(1) enhancement, we agree with the district court that Jackson's "offense involved" the two firearms that Beach sold. But we can affirm by simply addressing the high-capacity-magazine firearm that Beach sold on August 13th. That is easier, because it requires one less step—Beach's August 13th sale was committed "during" Jackson's offense of conviction, so we can ignore Beach's August 12th sale of the machinegun and the need to fit that sale within Jackson's "expanded" relevant conduct under § 1B1.3(a)(2).[4] *See* U.S.S.G. § 1B1.3(a).

We agree with the district court that on August 13th Jackson and Beach engaged in jointly undertaken criminal activity, that is, that they engaged in "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy." *Id.* § 1B1.3(a)(1)(B). It was by design, and not by happenstance, that Jackson and Beach arrived together at the 7-Eleven store to sell more firearms to the ATF agents.

Yet Jackson disputes that his and Beach's actions on August 13th were jointly undertaken criminal activity. He complains that the district court

---

[4] Jackson agrees that the firearm that Holley sold for him on August 12th should be included in Jackson's relevant conduct. So he acknowledges that he engaged in jointly undertaken criminal activity with Holley that day. And he further acknowledges under U.S.S.G. § 1B1.3(a)(2) that his acts in doing so were part of the same course of conduct or common scheme or plan as his August 13th crime. Otherwise, the Holley-sold firearm could not be within Jackson's relevant conduct.

5

"assumed an 'implicit agreement' to facilitate every firearm sale through 'logistical and protective support' merely because Mr. Jackson was present with others over two days." Op. Br. at 10. But the court's finding was fully justified based on the two men's coordinated actions that facilitated each other and offered mutual protection. *See United States v. Ellis*, 23 F.4th 1228, 1251 (10th Cir. 2022) (finding that two defendants had engaged in jointly undertaken criminal activity when they coordinated their travel and plausibly "gained 'mutual assistance and protection'—even if they ultimately made separate purchases from [their drug supplier]").

The district court's finding of jointly undertaken criminal activity withstands Jackson's argument that he and Beach were standalone sellers whose acts were not attributable to each other. But that's not how it works when people jointly undertake criminal activity. *Cf. United States v. Damon*, 595 F.3d 395, 402 (1st Cir. 2010) (concluding that three felons using a straw purchaser to each obtain a firearm were responsible under § 1B1.3(a)(1)(B) for all three firearms because of their jointly undertaken criminal activity in attempting "to illegally obtain guns from the same pawnshop, at the same time, and through the same proxy"); *United States v. Rollins*, 861 F. App'x 257, 260 (10th Cir. 2021) (treating a defendant driver as engaged in jointly undertaken criminal activity to his felon-in-possession conviction when his passenger shot a firearm at another automobile in a road-rage incident).

6

Next, Jackson argues that the district court failed to make particularized findings about the *scope* of the jointly undertaken criminal activity. But at the sentencing hearing, the district court carefully reviewed the "scope" requirement. The court referenced U.S.S.G. § 1B1.3 n.3(B)'s direction that the court "consider[] any explicit or implicit agreement fairly inferred from [the defendant's] conduct and that of others." R. vol. III at 8–9. Focused on that, the district court observed that "[t]his pattern of coordinated travel and the defendant's presence during others' transactions support an inference that he jointly undertook with his co-travelers the transportation, possession and sale of multiple firearms." *Id.* at 9. The court reiterated that "[t]he scope of that jointly undertaken activity is fairly inferred from their coordinated movements and mutual awareness of each other's transactions, [and] encompasses the possession and sale of firearms by defendant's co-travelers during those joint outings." *Id.* Those findings sufficiently identify the scope of the jointly undertaken criminal activity.

As for § 1B1.3(a)(1)(B)'s other requirements, the district court found that the actions were "in furtherance of and reasonably foreseeable within the jointly . . . undertaken activity." *Id.* at 9–10. These points are obvious here. Both days, the men's firearm possessions and sales were not hurried responses to a crime going wrong (as with, say, a bank teller's shooting)—they were part of the crime going right. The illegal sale of firearms was the whole goal. For these reasons, we agree with the district court's including Beach's firearm on

August 13th as part of Jackson's relevant conduct. And because the firearm that Beach sold that day had a high-capacity magazine, the district court properly included the two-level enhancement at § 2K2.1(a)(1).

As further support for affirming the district court's § 2K2.1 applications, we quote one particularly helpful example from the sentencing commission's commentary:

> Defendants T, U, V, and W are hired by a supplier to backpack a quantity of marihuana across the border from Mexico into the United States. Defendants T, U, V, and W receive their individual shipments from the supplier at the same time and coordinate their importation efforts by walking across the border together for mutual assistance and protection. Each defendant is accountable for the aggregate quantity of marihuana transported by the four defendants. The four defendants engaged in a jointly undertaken criminal activity, the object of which was the importation of the four backpacks containing marihuana (subsection (a)(1)(B)), and aided and abetted each other's actions (subsection (a)(1)(A)) in carrying out the jointly undertaken criminal activity (which under subsection (a)(1)(B) were also in furtherance of, and reasonably foreseeable in connection with, the criminal activity). In contrast, if Defendants U, T, V, and W were hired individually, transported their individual shipments at different times, and otherwise operated independently, each defendant would be accountable only for the quantity of marihuana he personally transported (subsection (a)(1)(A)). As this example illustrates, the scope of the jointly undertaken criminal activity may depend upon whether, in the particular circumstances, the nature of the offense is more appropriately viewed as one jointly undertaken criminal activity or as a number of separate criminal activities. *See* Application Note 3(B).

U.S.S.G. § 1B1.3 n.4(C)(viii).

As in the above example, Jackson's jointly undertaken criminal activity was coordinated and involved "mutual assistance and protection." We see no reason why the drug backpackers would be responsible for the drugs carried by

their fellow backpackers, but Jackson would not be responsible for the firearms carried and sold by his cohorts.

## CONCLUSION

Just as Beach's August 13th firearm supports the § 2K2.1(a)(1) enhancement, it provides the third firearm that activates the number-of-firearms enhancement at § 2K2.1(b)(1)(A). So we affirm the district court's two-level enhancement for that too.

Entered for the Court


Gregory A. Phillips
Circuit Judge